**UNITED STATES v. UNITED SHOE MA-CHINERY CORPORATION.**

Civ. A. No. 7198.

United States District Court
D. Massachusetts.

March 10, 1950.

See, also, 89 F.Supp. 349.

358

James M. Malloy, Holmes Baldridge, Richard B. O'Donnell, Sp. Assts. to Atty. Gen., C. Worth Rowley, Edward M. Feeney, Roy Freed, Boston, Mass., Morton Myerson, Brookline, Mass., Laurence S. Flaherty, Somerville, Mass., Sp. Attys. (Herbert A. Bergson, Asst. Atty. Gen., Gerald J. McCarthy, Sp. Asst. to Atty. Gen., Alfred Karsted, Boston, Mass., Margaret H. Brass, Washington, D. C., Bernard I. Kaplan, Boston, Mass., Robert L. Grant, Boston, Mass., Clarence S. Walker, Cambridge, Mass., James Browning, Washington, D. C., Sp. Attys., on the brief), for plaintiff.

John L. Hall, Claude R. Branch, Charles P. Curtis, Robert Proctor and John B. Reigeluth (of Choate, Hall & Stewart), Walter Powers and Bertram H. Loewenberg (of Sherburne, Powers & Needham), Boston, Mass., and Theodore Kiendl (of Davis, Polk, Wardwell, Sunderland & Kiendl), New York City, for defendant.

WYZANSKI, District Judge.

Defendant objects to the introduction of nearly 800 exhibits on the ground that they fall within the attorney-client privilege.

The rule which allows a client to prevent the disclosure of information which he gave to his attorney for the purpose of securing legal assistance is founded upon the belief that it is necessary "in the interest and administration of justice". Hunt v. Blackburn, 128 U.S. 464, 470, 9 S.Ct. 125, 127, 32 L.Ed. 488. As stated in the Comment to Rule 210 of the A.L.I. Model Code of Evidence: "In a society as complicated in structure as ours and governed by laws as complex and detailed as those imposed upon us, expert legal advice is essential. To the furnishing of such advice the fullest freedom and honesty of communication of pertinent facts is a prerequisite. To induce *clients* to make such communications, the privilege to prevent their later disclosure is said by courts and commentators to be a necessity. The social good derived from the proper performance of the functions of lawyers acting for their clients is believed to outweigh the harm that may come from the suppression of the evidence in specific cases." [Emphasis added.] But the privilege should be strictly construed in accordance with its object. People's Bank v. Brown, 3 Cir., 112 F. 652.

Since this memorandum examines in turn the asserted application of this privilege to different classes of documents, it is unnecessary to try to state at the outset and with precision every qualification necessary to found a justified claim of privilege. It will be enough now to note in general, and later to apply in detail, the main qualifications which are necessary. The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the

privilege has been (a) claimed and (b) not waived by the client.

Before the various classes of challenged documents are enumerated, three observations applicable to all of them should be stated.

1. For present purposes the client is United Shoe Machinery Corporation and all its subsidiaries and affiliates considered collectively. These corporations all used the same outside and inside counsel. The legal affairs of these corporations were closely related. Except for convenience in billing and formal accounting there was no attempt to regard one particular corporation as "the client."

2. None of these corporations or their officers or employees consulted counsel with the purpose of seeking assistance in committing a crime or a tort. Mistaken or not, the officers and employees believed they were acting according to law. Unlike the persons referred to by Mr. Justice Cardozo in Clark v. United States, 289 U.S. 1, 15, 53 S.Ct. 465, 77 L.Ed. 519, they sought advice so that they might continue to act according to law. And counsel gave advice in the same spirit.

3. The defendant seasonably claimed whatever privilege it had. It did not waive its privilege by surrendering the exhibits in response to subpoenas, because it was agreed in advance by Government counsel that compliance with the subpoenas should not constitute a waiver.

The documents which are to be examined fall into four classes: (1) those to or from independent lawyers; (2) those to or from defendant's legal department; (3) those to or from defendant's patent department; and (4) working papers of persons in the patent department.

1. The first group of documents consist chiefly of letters to or from members of independent law partnerships.

These communications were all made at a time when each of the law partnerships was counsel for United, its subsidiaries and affiliates. The members of the law partnership in each case were acting as attorneys giving legal advice. They were not acting as business advisers or officers of United, even though occasionally their recommendations had in addition to legal points some economic or policy or public relations aspect and hence were not unmixed opinions of law. The modern lawyer almost invariably advises his client upon not only what is permissible but also what is desirable. And it is in the public interest that the lawyer should regard himself as more than predicter of legal consequences. His duty to society as well as to his client involves many relevant social, economic, political and philosophical considerations. And the privilege of nondisclosure is not lost merely because relevant nonlegal considerations are expressly stated in a communication which also includes legal advice. It follows that in so far as these letters to or from independent lawyers were prepared to solicit or give an opinion on law or legal services, such parts of them are privileged as contain, or have opinions based on, information furnished by an officer or employee of the defendant in confidence and without the presence of third persons. Cf. Tutson v. Holland, 60 App. D.C. 188, 50 F.2d 338.

However, in so far as the subject of these communications was the giving of legal or other advice upon the basis of facts disclosed to the attorney by a person outside the organization of defendant and its affiliates the communication is not privileged. Thus, for example, there is no privilege for so much of a lawyer's letter, report or opinion as relates to a fact gleaned from a witness, Hickman v. Taylor, 329 U.S. 495, 508, 67 S.Ct. 385, 91 L.Ed. 451, affirming D.C., 4 F.R.D. 479, 482; see Wigmore, Evidence, 3d Ed., § 2317; or a person with whom defendant has business relations, General Electric Co. v. Jonathan Clark & Sons Co., C.C.W.D.N.Y., 108 F. 170, In re Ruos, D.C.E.D.Pa., 159 F. 252; or a public document such as a patent, cf. Edison Electric L. Co. v. United States Electric L. Co., C.C.S.D.N.Y., 44 F. 294; or a judicial opinion, Aaron v. United States, 8 Cir., 155 F. 833.

Where a communication neither invited nor expressed any legal opinion whatsoever, but involved the mere soliciting or giving of business advice, it is not privi-

leged. United States v. Vehicular Parking, D.C.Del., 52 F.Supp. 751.

2. The second group of communications are to or from the resident general counsel of United and his juniors.

On the record as it now stands, the apparent factual differences between these house counsel and outside counsel are that the former are paid annual salaries, occupy offices in the corporation's buildings, and are employees rather than independent contractors. These are not sufficient differences to distinguish the two types of counsel for purposes of the attorney-client privilege. And this is apparent when attention is paid to the realities of modern corporate law practice. The type of service performed by house counsel is substantially like that performed by many members of the large urban law firms. The distinction is chiefly that the house counsel gives advice to one regular client, the outside counsel to several regular clients.

It follows that United's general counsel and his clerks constitute for purposes of the privilege attorneys. However, no doubt a high percentage of the communications passing to or from them fall outside the privilege because they report or comment on information coming from persons outside the corporation or from public documents, or are summaries of conferences held with or in the presence of outsiders.

3. The third group is composed of communications, memoranda and the like to or from the persons in United's patent department. Except where these communications are to or from outside counsel or the general counsel and his staff, and are within the privilege as heretofore stated and limited, these communications are not privileged.

Eight of the persons in the patent department are not members of the bar of any court. They are mere solicitors of patents who fall outside the privilege. Brungger v. Smith, C.C.Mass., 49 F. 124. Compare Moseley v. Victoria Rubber Co., 55 L.T. 482 (Ch.Div. 1886). Thirteen other persons in the department are not members of the bar of this Court or of the courts of

this Commonwealth but are members of other judicial bars. The fact that they, though resident in Massachusetts and regularly working here, have never received a license to practice law here shows that these regular employees are not acting as attorneys for United. (The situation would be different with regard to a visiting attorney from another state, for whom the privilege might well be invoked.) Nor can it properly be said that they are acting merely as clerks for the head of the patent department, who is a Massachusetts attorney. These patent department employees communicate usually directly (and only rarely through the head of the patent department) with many officers and employees of United. Thus, these patent department employees are not protected by a privilege, if there were one, available to the head of the patent department.

The remaining persons in the patent department number only a few more than the twenty-one whose situation has already been discussed. This remainder, so far as appears, do the same work as the twenty-one. And if the twenty-one are not attorneys within the privilege, that fact is persuasive though perhaps not conclusive evidence that the remainder are not attorneys within the privilege.

But it is not necessary to rely only on that fact. All the men in the department function less as detailed legal advisers than as a branch of an enterprise founded on patents. They are comparable to the employees with legal training who serve in the mortgage or trust departments of a bank or in the claims department of an insurance company. Grist which comes to their mill has a higher percentage of business content than legal content. Unlike the independent lawyer they are expected to have at the forefront of their considerations. business judgment, corporate policy and technical manufacturing aspects of the shoe machinery industry. So far as the proffered evidence in this case shows, the principal topics on which they spend time are questions of business policy, of competition as disclosed by facts derived from third persons, of the scope of public patents and of the application of patent law to develop-

ments by United and United's competitors. They have not been shown to spend most of their time on the application of rules of law to facts which are known only to United's employees.

Therefore, quite apart from the nature of any specific communication, the *relationship* of a person in the patent department to the corporation is not that of attorney and client. Hence, the communication of a person in the patent department is as unprivileged as that of a lawyer who shares offices with his so-called client and gives him principally business but incidentally legal advice, United States v. Vehicular Parking, D.C.Del., 52 F.Supp. 751, or an attorney who acts principally as accountant and also renders legal advice on the basis of accounting data, In re Fisher, D.C. S.D.N.Y., 51 F.2d 424, or an attorney who negotiates the business aspects of a real estate transaction, United States v. De Vasto, 2 Cir., 52 F.2d 26, 30, 78 A.L.R. 336, or an attorney who acts as an investigator for the Federal Bureau of Investigation. O'Neill v. United States, D.C.E.D.Pa., 79 F.Supp. 827, 829.

4. Some of the communications are claimed to be privileged as the "work product of an employee acting in a legal capacity". However, so far as appears, all these working papers were prepared by lawyers in the patent department who by the preceding paragraph have been ruled not to be attorneys within the attorney-client privilege. Hence, their working papers are not privileged even if (contrary to the perhaps untenably broad dictum in Hickman v. Taylor, 329 U.S. 495, 508, 67 S.Ct. 385, 91 L.Ed. 451) it be assumed that there ever is a privilege for the working papers of attorneys.

Defendant's objections to certain exhibits on the ground that they are within the attorney-client privilege are overruled except as provided in the following sentences of this paragraph. Defendant's objections are sustained to such parts of these exhibits as meet all of the three following tests:

(a) the exhibit itself was prepared by or for either (1) independent counsel or (2)

defendant's general counsel or one of his immediate subordinates; and

(b) as appears upon the face of the exhibit, the principal purpose for which the exhibit was prepared was to solicit or give an opinion on law or legal services or assistance in a legal proceeding; and

(c) the part of the exhibit sought to be protected consists of either (1) information which was secured from an officer or employee of defendant and which was not disclosed in a public document or before a third person, or (2) an opinion based upon such information and not intended for disclosure to third persons.