CHORE–TIME EQUIPMENT, INC.,
Plaintiff,

v.

BIG DUTCHMAN, INC., Defendant.

Civ. A. No. 4853.

United States District Court
W. D. Michigan, S. D.

June 30, 1966.

Reconsideration Denied Sept. 28, 1966.

See 258 F.Supp. 196.

Wheeler, Upham, Bryant & Uhl, Grand Rapids, Mich.; Pepple, Yoder & Ainlay, Goshen, Ind.; Olson, Trexler, Wolters & Bushnell, Chicago, Ill.; George V. Boucher, Grand Rapids, Mich.; Frank E. Yoder, Goshen, Ind. and Richard Bushnell, Chicago, Ill., of counsel, for plaintiff.

Price & Heneveld, Grand Rapids, Mich.; Warner, Norcross & Judd, Grand Rapids, Mich.; Lloyd A. Heneveld and Charles C. Lundstrom, Grand Rapids, Mich., of counsel, for defendant.

### OPINION ON MOTION FOR PRODUCTION

FOX, District Judge.

The defendant, Big Dutchman, Inc., has made a motion in this patent infringement action, pursuant to Rule 34 of the Federal Rules of Civil Procedure, for the production of correspondence between the plaintiff and its attorneys concerning United States Patent Application Serial No. 59,312 and United States Patent Application Serial No. 307,274. The defendant claims the correspondence is necessary in order to enable it to properly prepare its defense.

In general, the correspondence is concerned with the preparation of the patent applications, the scope of the claims to be made under each, the various patent procedures to be observed during the prosecution of the applications, and the advisablity of pursuing an appeal on the Examiner's decisions.

The plaintiff resists discovery of the correspondence primarily on the ground that the letters fall within the attorney-client privilege.

Despite the current emphasis on the need for mutual knowledge of the

facts among the parties to a suit, it generally is acknowledged that the attorney-client privilege is so sacred and so compellingly important that the courts must, within their limits, guard it jealously.

In determining whether the privilege should be applied, most courts have followed the qualifications set forth in Judge Wyzanski's opinion in United States v. United Shoe Machinery Corp., 89 F.Supp. 357, at 358–359:

"The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is *acting as a lawyer*; (3) the communication relates to a fact of which the attorney was informed (a) by his client, (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client." (Emphasis supplied.)

Although the correspondence in question appears to satisfy the above qualifications, the defendant contends that it is discoverable, citing the following cases: Zenith Radio Corporation v. Radio Corporation of America, 121 F.Supp. 792 (D.C.Del., 1954); American Cyanamid Co. v. Hercules Powder Co., 211 F.Supp. 85 (D.C.Del., 1962); and Paper Converting Machine Co. v. FMC Corp., 215 F.Supp. 249 (D.C.E.D.Wis., 1963).

In the Zenith case, Judge Leahy considered the term "acting as a lawyer" of decisive importance with respect to the question whether communications made in connection with patent applications fall within the attorney-client privilege.

This court considers the Zenith case to be inapposite for the following reasons. First, the case at bar involves only outside counsel, whereas the Zenith case was concerned primarily with attorneys working in corporate patent departments. Because attorneys who work in patent departments "function less as detailed legal advisers than as a branch of an enterprise founded on patents," it is understandable why their work connected with advising corporations on patent applications should not be considered legal work in the ordinary sense of the term.[1] This is, of course, not true of independent lawyers who are engaged specifically for the legal advice they can provide concerning patent applications. Second, with respect to outside counsel, Judge Leahy opined that they almost invariably qualify under the requirement of "acting as lawyers."[2]

Judge Leahy was obviously aware of the differences between an independent counsel advising a client as to the legal aspects of patent matters and an attorney in a patent department who is concerned not only with patent law, but also, and more importantly, with the various business considerations which attend a decision to apply for a patent.

Finally, as Judge Wyzanski stated in United Shoe:

"The modern lawyer almost invariably advises his client upon not only what is permissible but also what is desirable. And it is in the public in-

1. 89 F.Supp. at 360.
As to attorneys employed in patent departments, Judge Wyzanski also observed: "Grist which comes to their mill has a *higher percentage* of business content than legal content. * * * So far as the proferred evidence in this case shows, the *principal topics on which they spend time* are questions of business policy, of competition as disclosed by facts derived from third persons, of the scope of public patents * * *. They have not been shown to *spend most of their time* on the application of rules of law to facts which are known only to [the company's] employees." 89 F.Supp. at 360–361.

2. " 'Outside counsel' for corporations almost invariably, and 'house counsel' ordinarily qualify under this requirement." 121 F.Supp. at 794.

terest that the lawyer should regard himself as more than predicter of legal consequences. His duty to society as well as to his client involves many relevant social, economic, political and philosophical considerations. *And the privilege of nondisclosure is not lost merely because relevant nonlegal considerations are expressly stated in a communication which also includes legal advice.* It follows that in so far as these letters to or from independent lawyers were prepared to solicit or give an opinion on law or legal services, such parts of them are privileged as contain, or have opinions based on, information furnished by an officer or employee of the defendant in confidence and without the presence of third persons." [3] (Emphasis supplied.)

In American Cyanamid, supra, Judge Wright, citing the United Shoe case as authority, held that letters from an outside counsel to Cyanamid were not privileged because they were based on facts gleaned from a public record. After a thorough review of the correspondence in question, this court has determined that none of the letters could be classified as an opinion or report gleaned from a public record.

Finally, the court in Paper Converting Machine, relying on the Zenith case, supra, held that correspondence between the defendant and its house counsel regarding an application for a patent was discoverable on the ground that the attorneys were not acting as lawyers in connection with the documents. The court said:

"  *  *  *  we do not believe that they were receiving and applying rules of law to confidential information received from their client." [4]

As was noted by Judge Wyzanski in United Shoe, there is little difference between a house counsel and an independent counsel.

"The type of service performed by house counsel is substantially like that performed by many members of the large urban law firms. The distinction is chiefly that the house counsel gives advice to one regular client, the outside counsel to several regular clients." [5]

Consequently, if the Paper Machine case, supra, is to be distinguished, some other ground must be found. We are of the opinion that by implication Judge Wyzanski was also referring to house counsel when he said the privilege should not be lost merely because an attorney includes non-legal advice with legal advice. Moreover, how is a court to determine when a patent lawyer is applying rules of law to confidential information received from a client as opposed to the situation where he is only communicating highly technical information? Furthermore, as stated earlier in this opinion, the Zenith case, supra, was concerned primarily with attorneys employed in patent departments.

Lest this opinion be read as implying that all communications between a client and an outside patent counsel are privileged, it should be noted that every communication must be reviewed in light of all the attendant facts in order to determine its status vis-à-vis the attorney-client privilege.

After a thorough inspection of the correspondence submitted to it by the plaintiff, this court has determined that all of it has legal significance. Indeed, it is similar in many respects to the documents which were before the court in Ellis-Foster Co. v. Union Carbide & Carbon Corp., 159 F.Supp. 917 (D.C.N.J.), rev'd on other grounds 284 F.2d 917 (CCA 3, 1960). In holding the correspondence privileged, the court stated:

"All of the letters would seem to have been written as matters of strict confidence involving legal questions concerning technical matters. While it is true that complete revelation of

3. 89 F.Supp. at 359.

4. 215 F.Supp. at 252.

5. 89 F.Supp. at 360.

relevant facts should be encouraged for trial purposes, nevertheless an attorney's dealings with his client, if both are sincere, and if the dealings involve other than mere technical matters, should be immune to discovery proceedings. There must be freedom from fear of revealment of matters disclosed to an attorney because of the peculiarly intimate relationship existing." [6]

Where a lawyer possesses multifarious talents, his clients should not be deprived of the attorney-client privilege, where applicable, simply because their correspondence is also concerned with highly technical matters. Patent lawyers should not be banished to the status of quasi-lawyers by reason of the fact that besides being skilled in the law, they are also competent in scientific and technical areas.

█ The mere fact that non-lawyers could also have performed the services in question does not in any way destroy the privilege. The admission of non-lawyers into the field of patent practice

is not a sufficient reason "for breaking down well recognized and soundly based rules affecting the claim of privilege." [7]

This court is in accord with the following statement of Judge Meaney in the Ellis-Foster case:

"I find myself unable to agree with the implied contention that because an attorney happens to be engaged in the field of patents, in which field non-attorneys are authorized to practice, he is *ipso facto* deprived of his status as a lawyer in every activity in which he operates so long as a patent prosecution is involved. There is enough confusion, sometimes thrice confounded, resulting from derogation from the functions of attorneys, and trespass on their proper sphere of activity. *Cuilibet in arte sua credendum est.* [8] That may seem in wrong context but it is apposite and I know of no other magic touchstone for the resolution of the problem inherent in this discussion." [9]

The motion of the defendant is denied.

It is so ordered.

6. 159 F.Supp. 919.
7. 159 F.Supp. 920.
8. "Any person skilled in his peculiar art or profession is to be believed, [i. e., when he speaks of matters connected with such art."] Black, Law Dictionary (4th ed. 1951) (Citations omitted.)
9. 159 F.Supp. 920. Wigmore states: "The theory of the privilege * * * clearly requires that the client's bona fide belief in the status of his adviser as an admitted attorney should entitle him to the privilege. No doubt an intention to employ only such a person is necessary, as well as a respectable degree of precaution in seeking one. But from that point onward he is entitled to peace of mind, and need not take the risk of a

deception or of a defective professional title." 8 Wigmore, Evidence § 2302 (McNaughton rev 1961) Bentham observed: "When in consulting with a law adviser, attorney or advocate, a man has confessed his delinquency, or disclosed some fact which, if stated in court, might tend to operate in proof of it, such law adviser is not to be suffered to be examined as to any such point. The law adviser is neither to be compelled, nor so much as suffered, to betray the trust thus reposed in him. Not suffered? Why not? Oh, because to betray a trust is treachery; and an act of treachery is an immoral act. * * *" Jeremy Bentham, Rationale of Judicial Evidence (1827), 7 The Works of Jeremy Bentham 473 (Bowring ed. 1942.)