**J. P. FOLEY & CO., INC., et al.,**
**Plaintiffs,**

v.

**Oliver D. VANDERBILT et al.,**
**Defendants.**

**No. 70 Civ. 4194.**

United States District Court,
S. D. New York.

Jan. 14, 1974.

4. Oberholtzer v. Scranton, 59 F.R.D. 572 (E.D.Pa.1973).

Milberg & Weiss, New York City, for plaintiffs; Lawrence Milberg, New York City, of counsel.

White & Case, New York City, for defendant Arthur Young & Co.; Thomas Kiernan, Jeffrey A. Barist, Allan L. Gropper, New York City, of counsel.

## MEMORANDUM

TENNEY, District Judge.

Defendant Arthur Young & Co. ("Arthur Young") moved pursuant to Fed.R.Civ.P. 37 for an order directing plaintiff John P. Foley ("Foley") to answer certain questions to which Foley had objected at his deposition. The Court referred the matter to a magistrate to hear and determine. The magistrate rendered an oral opinion in which he denied in part and granted in part Arthur Young's motion. Arthur Young has requested review and reversal of that portion of the magistrate's opinion which dealt with Foley's assertion of the attorney-client privilege. That request has been treated as a motion to reargue. For the reasons stated *infra*, that portion of the magistrate's opinion is modified.

Plaintiffs allege in their complaint that defendants Blair & Co., Inc. ("Blair"), various individuals and Arthur Young violated § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and committed common law fraud by making material misrepresentations and by failing to disclose material facts regarding the financial condition of defendant Blair during the course of negotiations leading up to a series of agreements, dated April 3, 1970, under which plaintiffs loaned Blair $3 million. Plaintiffs have sued Arthur Young—Blair's independent auditors—claiming that they relied upon an allegedly misleading report concerning Blair's financial status which Arthur Young issued prior to the time plaintiffs entered into the agreements with Blair.

Arthur Young did not participate in any of the negotiations leading up to the signing of the agreement. It therefore sought by deposition of Foley to determine what was actually represented to plaintiffs during the negotiations, whether those representations were false and whether plaintiffs actually relied upon those representations. Upon advice of counsel, Foley refused to answer 28 questions on the ground that to compel answers would violate the attorney-client privilege. Four of the questions ("Group I") have been characterized by Arthur Young (Def.'s Memorandum of Law, Appendix) as questions having to do with the nature of the services rendered by Foley's attorney—Leonard Feldman ("Feldman"); nine of the questions ("Group II") have been characterized as having to do with whether Foley consulted with Feldman regarding specific documents and agreements; ten of the questions ("Group III") have been characterized as having to do with information Feldman obtained from third parties and passed along to Foley; and five of the questions ("Group IV") can best be characterized as questions regarding the substance of certain communications between Foley and Feldman on specific occasions.

It is plaintiffs' contention that Foley (and, for that matter, Feldman) need not answer any of these questions because Feldman acted in the capacity of counsel throughout the entire course of the negotiations leading up to the April 1970 agreements. Arthur Young argues that Feldman's services during the negotiations were primarily of a business nature and that Feldman acted as Foley's business agent so that the attorney-client privilege cannot be asserted here. Arthur Young also argues that, even if Feldman acted as Foley's attorney in some respects, the matters sought to be elicited from Foley do not come within the privilege. A third argument made is that, by instituting this action, Foley has waived the attorney-client privilege.

The magistrate apparently felt that the attorney-client privilege was generally applicable but ruled that Arthur Young could pursue three lines of inquiry. First, he ruled that Foley could not assert the privilege with respect to those questions directed solely to what Feldman reported to Foley about meetings Feldman had attended with repre-

sentatives of Blair. The magistrate added, however, that Foley need not testify as to the substance of any comments or advice Feldman may have given Foley while making these reports. Second, the magistrate ruled that Foley could be asked whether he had obtained legal advice concerning the April 1970 agreements but that he could not be asked the substance of that advice. Finally, the magistrate ruled that it would be proper to ask Foley whether Feldman had given any business advice to him. The magistrate indicated, however, that if that question were answered in the negative, Arthur Young would be barred from pursuing that line of questioning.

■■ The attorney-client privilege[1] applies only if:

"(1) the asserted holder of the privilege is or sought to become a client;
(2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer;
(3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and . . . (4) the privilege has been (a) claimed and (b) not waived by the client." United States v. United Shoe Machinery Corp., 89 F.Supp. 357, 358–359 (D. Mass.1950).

■■ The privilege also extends to communications from an attorney to his client. 8 Wigmore, Evidence § 2320 (McNaughton rev. 1961); Buckley v.

Vidal, 50 F.R.D. 271, 275 (S.D.N.Y. 1970). However, it does not cover an attorney's communications—whether they are in the form of information or advice—which are based upon conversations with third parties. Colton v. United States, 306 F.2d 633, 639 (2d Cir. 1962); United States v. United Shoe Machinery Corp., *supra*, 89 F.Supp. at 359; Congoleum Industries, Inc. v. G A F Corp., 49 F.R.D. 82, 85–86 (E.D. Pa.1969). Thus, that portion of the magistrate's ruling which ordered Foley to testify as to those matters which Feldman learned from third parties and reported back to him is adopted in full. However, Arthur Young can also question Foley regarding the substance of any comments or advice Feldman may have given Foley in the course of these discussions because these communications are not based upon the confidential communication of the client.

■ It should also be noted that the privilege pertains solely to the substance of communications. It does not preclude inquiry into the subject matter of the communications. *See generally* Fed.R.Evid. 510, Advisory Committee's Note. Therefore, Foley cannot refuse to answer questions of the nature represented by Group II.

■ It is also clear that, where the attorney acts as a negotiator or business agent for his client, the confidential communications between them are not privileged. Lowy v. Commissioner, 262 F.2d 809, 812 (2d Cir. 1959); Comercio e Industria Continental, S.A. v. Dresser Industries, Inc., 19 F.R.D. 513, 514 (S. D.N.Y.1956). For that reason, it is permissible to question either the client or the attorney regarding the general nature of the attorney's services to his

---

1. Plaintiffs argue that the scope of the attorney-client privilege is governed by the law of New York. *See* Baird v. Koerner, 279 F.2d 623 (9th Cir. 1960). The Court is persuaded, however, that, because jurisdiction in this case is predicated upon the federal securities laws, federal law controls.

*See* Garner v. Wolfinbarger, 430 F.2d 1093 (5th Cir. 1970), cert. denied, 401 U.S. 974, 91 S.Ct. 1191, 28 L.Ed.2d 323 (1971); Colton v. United States, 306 F.2d 633 (2d Cir. 1962); Fed.R.Evid. 501, Advisory Committee's Note.

client, the scope of his authority as agent and the substance of matters which the attorney, as agent, is authorized to pass along to third parties. Colton v. United States, *supra*, 306 F.2d at 636, 638; United States v. Tellier, 255 F.2d 441 (2d Cir. 1958).

The transcript of Foley's testimony at the deposition in question sheds little light upon the issue of whether Feldman was acting as an attorney or as business agent during the negotiations preceding conclusion of the April 1970 agreements. At one point, Foley was asked:

"[Attorney for Arthur Young] Q. Did he [Feldman] or you [Foley] play the lawyer part in the negotiation which led to the meeting of the minds as to the substance of the agreements?

"[Foley] A. That would be difficult to say, very difficult to say.

"Q. Who shared it?

"A. We shared it. But I had the —obviously had the veto function because I was the person putting up the securities. He was my counsel." Tr. at 113.[2] (Emphasis supplied.)

At yet another point during the deposition, Foley stated:

"Mr. Feldman can give you a far better answer to this question than I can because he is more—he is more conversant with the law, he is more conversant with much of the information with respect to this case and *he negotiated the deal with the people at Blair on my behalf*." Tr. at 261. (Emphasis supplied.)

Foley not only gave contradictory testimony, but he also invoked the privilege in response to threshold questions such as those contained in Group I which might have aided the Court in determining the exact nature of Feldman's services and the scope of Feldman's authority. Moreover, his responses, as exemplified by the portions of his testimony set forth *supra,* were conclusory rather than descriptive.

■ The Court appreciates the magistrate's difficulties in determining the proper disposition of this matter. However, the magistrate's approach would permit Foley to invoke the privilege merely by answering that he obtained "legal", rather than "business", advice from Feldman. The more appropriate remedy at this stage of the proceedings is to depose Foley again in order to determine the exact nature of the services Feldman rendered and the scope of Feldman's authority during negotiations. Of course, Foley need not reveal the substance of any confidential communications at this stage. However, before he can be permitted to invoke the privilege as to the substance of confidential communications, he must first reveal specific facts which would tend to establish that the Foley-Feldman relationship was one of attorney and client. Such conclusory answers as "He was my counsel" or "He negotiated the deal" are not sufficient. In re Bonanno, 344 F.2d 830, 833 (2d Cir. 1965). If, after the additional deposition of Foley, the Court determines that Feldman's services were of a business nature, Foley will be ordered to testify as to the substance of any confidential communications he and Feldman may have had. If, on the other hand, it becomes clear that Feldman's services were of a legal nature, the Court will then consider whether Foley has waived the privilege.

Accordingly, Foley is directed to make himself available for further deposition by Arthur Young within thirty (30) days of the filing of this opinion. Arthur Young is instructed to question him regarding the specific nature of Feldman's services and the scope of Feldman's authority during the course of negotiations with Blair. Foley may also be questioned as to whether he consulted with Feldman regarding specific

---

2. "Tr." refers to the transcript of Foley's deposition.

documents and agreements. (Foley need not divulge the substance of these communications.) Finally, Arthur Young may question Foley regarding information which Feldman learned from third parties and subsequently communicated to him and communications, in the form of advice or comments, which Feldman may have made to Foley in reference to the information Feldman obtained from third parties. Within ten (10) days of the completion of Foley's deposition, Arthur Young is instructed to renew the instant motion. At that time, the Court shall reconsider whether Foley can properly invoke the attorney-client privilege with respect to those types of questions not covered by the instant order.

So ordered.