CAREY–CANADA, INC., Plaintiff,

v.

CALIFORNIA UNION INSURANCE COMPANY, et al., Defendants.

Civ. A. No. 83–1105.

United States District Court, District of Columbia.

May 29, 1986.

Jerold Oshinsky, Washington, D.C., for plaintiff.

Dennis M. Flannery, Carol H. Fishman, James C. Gregg, James Young, Washington, D.C., for defendants.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

Pending before the court are two motions to compel, one filed by the plaintiff and the other submitted collectively by the remaining defendants.[1] We have been absolutely deluged with pleadings.[2] Not only is the sheer volume of these papers an abuse of the process and adds unmeasurably to the expense of this litigation, but the fact that the parties and their counsel have previously tested many of the same issues raised in these motions in other fora compounds the unnecessary burden the parties have placed on the court. All of the parties have long been experienced in asbestos-related litigation and thus they should have been able to work out all or most of these disputes among themselves. We are strongly tempted to leave them to this task. Nevertheless, we consider these motions in turn below in order to discour-

age another flood of papers in connection with motions to reconsider.

### 1. *Plaintiff's Motion to Compel*

On May 7, 1985, we denied plaintiff's motion for partial summary judgment with respect to whether the term "asbestosis" as used in the various policies at issue is clear and unambiguous.[3] We held in that decision that "the evidence to date regarding the meaning and use of the word asbestosis establishes the ambiguity of the term" and that the defendants would thus be permitted "to present extrinsic evidence of the use of the word at trial." Memo. Opin. at 9. Having been unsuccessful in its efforts to establish the absence of ambiguity in the contracts at issue, plaintiff now seeks to discover the very kind of extrinsic evidence we examined at some length in our memorandum opinion and which the defendants in their opposition to plaintiff's motion insisted vigorously was relevant and admissible on the question of ambiguity. Although we canvassed categories of extrinsic evidence only in explicit connection with the "admissibility" of such evidence, we are certain that defendants are well aware that the test for discoverability is that the information sought be "relevant to the subject matter" and "appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R. Civ.P. 26(b)(1). For the reasons discussed below, we thus grant plaintiff's motion to compel with modifications.

The principle thrust of plaintiff's motion is the disclosure of documents related to the single asbestosis-only issue. For this reason, it seeks to examine the asbestosis and asbestos-related exclusions in insurance policies sold by the defendants to non-

---

**1.** Five of the original nine defendants have since signed the Wellington Agreement and have been dismissed from this litigation by stipulation.

**2.** By our count, 744 pieces of paper with at least some print on them have been submitted in connection with these two motions, presumably in the expectation that the court would read all of this material. The case file in this action already has mounted to over nine jackets. Such a barrage of filings is a hindrance rather than

an aid, to timely and considered disposition of matters before the court.

**3.** We also considered it inappropriate to reach the question whether defendants are liable under *Keene Corp. v. Insurance Co. of North America,* 667 F.2d 1034 (D.C.Cir.1981), *cert. denied,* 455 U.S. 1007, 102 S.Ct. 1644, 71 L.Ed.2d 875 (1982).

party insureds.[4] Plaintiff's requests thus encompass claims files and payment records, as well as underwriting and policy files.[5] Defendants depict such requests as seeking "essentially every document concerning each insured involved in the sale or manufacture of asbestos," Home Opp. at 10. Defendants contend that such requests are legally irrelevant, overbroad, and unreasonably burdensome.[6]

## A. Relevance

■ We find defendants' objections on the grounds of relevance meritless. Defendants essentially argue that policies issued to non-party insureds are not relevant to the actual intent of the negotiating parties at the time the insurance policies at issue were agreed to. However, not only did we cite two policies sold by some of the defendants to non-party insureds in our May 7, 1985 memorandum opinion, but every court to date of which we are aware and which has considered such requests in related asbestos litigation has likewise concluded that such discovery is both relevant and discoverable. *See In re Asbestos Insurance Coverage Cases,* Judicial Council Coordination Proceeding No. 7072 (Superior Court, San Francisco) ("California Coordination Actions");[7] *Celotex Corp. v. Aetna Casualty & Surety Co.,* No. 79–5885 (Cir.Ct.Hillsborough Cty., Fla.);[8] *Maryland Casualty Co. v. W.R. Grace & Co.,* No. 83 Civ. 7451 (S.D.N.Y.) (Bernikow, Mag.). Even were we to accept the parameters of relevancy set out by the defendants, the information about non-party insureds sought by plaintiff arguably bears on the intent of at least one negotiating party, the underwriter, at the time these agreements were reached.[9]

The relevance of such information, however, cannot be so narrowly defined, as defendants attempt to do. Indeed, they overlook the significance of industry usage in the interpretation of insurance contracts. As one authority has noted "courts have stated that in interpreting insurance contracts, reference should be made to considerations of business and insurance practices. And evidence of usage is admissible to explain a clause in a contract of insurance ... where ambiguous words are employed...." 13 J. Appleman & J. Appleman, Insurance Law & Practice § 7388 (1976); *cf. Sunstream Jet Express, Inc. v. International Air Service Co.,* 734 F.2d 1258, 1269 n. 8 (7th Cir.1984) (under Illinois law, once it is determined that extrinsic and parol evidence is admissible, any relevant evidence is admissible to explain the negoti-

---

**4.** Defendants are willing only to respond to plaintiff's requests to the extent that such documents relate to policies issued to the Jim Walter Corporation. Home Opp. at 9; Columbia Casualty Opp. at 2–3; Northbrook Opp. at 1.

**5.** In it most recent submission, plaintiff purports to limit its discovery request to (1) all policies sold by defendants that contain an asbestos-related exclusion (2) all claims and underwriters files concerning such policies as well as (3) relevant deposition transcripts and exhibits marked at deposition or at trial in the California Coordination Actions. Plaintiff's Reply Statement in Further Support of its Motion to Compel Discovery, at 9.

**6.** To the extent defendants also oppose plaintiff's requests on the grounds of attorney-client privilege and other protections concerning confidentiality, we believe the parties can work out any such disagreements by voluntarily entering into a mutually satisfactory protective order.

**7.** Three of the four remaining defendants in this action or their affiliates were parties to the California Coordination Actions.

**8.** In this litigation, the parent of the plaintiff in the instant litigation sought discovery from defendant North Star Reinsurance Corporation of Delaware concerning policyholders other than the Celotex Corporation. By order dated October 7, 1985, the court ordered production of the documents North Star had been required to produce in the California Coordination Actions. Although defendant Home was also a party to this litigation, counsel for Celotex apparently agreed not to contend that this order is binding precedent on Home's ability to object to similar discovery. The court's order is nonetheless instructive regarding the propriety of the discovery now sought by plaintiff in this action before the court.

**9.** Two underwriters formerly employed by some of the defendants testified in their depositions that in the course of writing policies issued to the plaintiff they consulted and/or knew of the asbestos coverage terms of policies covering non-party insureds. *See* Depos. of Wayne Wentz; Depos. of Walter Lucas.

ations between the parties, including evidence of industry custom).

## B. Overbreadth

Defendants' position that plaintiff's requests are overbroad simply is an amplification of the relevancy argument just discussed and rejected. They contend that plaintiff's request for documents related to non-party insureds are overbroad in seeking information about policies which (1) were written by underwriters not involved in the policies at issue in the instant litigation and/or (2) were entered into subsequent to the policies at issue in the instant case. Again, defendants choose to ignore our explicit reference to such policies in our May 7, 1985 memorandum opinion. Moreover, defendants' own discovery requests belie their position. In their own motion to compel, they request counsel's drafts of portions of Jim Walter Corporation's annual reports. Although defendants contend that these drafts relate to the contemporaneous understanding of the Jim Walter Corporation of the asbestosis exclusions, nowhere in this motion do defendants restrict these requests to documents relating only to attorneys who worked with the brokers who negotiated the policies before the court. Likewise, in seeking these documents which describe policy revisions of asbestos-related coverage, defendants impliedly acknowledge the probative relevance of subsequent revisions of exclusionary clauses.[10] Defendants, in effect, have requested the mirror image of what they object to producing to plaintiff.

## C. Burdensomeness

We are, however, fully aware of the enormity of the discovery sought and the heavy burden such would impose on the defendants. The descriptions by some of the defendants of their experiences in the California Coordination Actions are instructive and give us pause. Although the burden of such discovery must be evaluated in light of how much is at stake in this litigation, we must also weigh the likely value of the discovery sought. We thus are guided in this matter by the determination of the Court of Appeals for this Circuit that while the interpretation given to the same contract by one of the parties in its dealings with third parties is relevant to the interpretation of contract terms, such evidence is "not similarly persuasive" as the historical interpretation given to a contract by the parties themselves. *Tymshare, Inc. v. Covell*, 727 F.2d 1145, 1150 (D.C.Cir.1984).

Although we find arguably relevant the information which defendants contend is overbroad, it is our considered judgment that such extrinsic evidence is likely to be less persuasive than information about policies of non-party insureds issued prior to and written or referred to by the same underwriters of the policies at issue in this case. Given the thousands upon thousands of documents implicated by plaintiff's requests, we conclude that in the interest of judicial economy and expeditious litigation, plaintiff's discovery should be limited to documents relating to the policies defendants sold to non-party insureds that contain an asbestosis or asbestos-related exclusion *and* which were written or referred to by the underwriters of the policies at issue in the instant case prior to the issuance of the policies before the court. Such documents include the policies themselves and all claims and underwriters' files concerning these policies. Limiting discovery in this manner will afford the plaintiff the benefit

---

10. Defendants reliance on *McKee v. State Farm Fire & Casualty Co.*, 145 Cal.App.3d 772, 193 Cal.Rptr. 745 (1983), is misplaced. Although the court stated that evidence of subsequent revisions of an exclusionary clause in an insurance policy is inadmissible because it is irrelevant, the court's reasoning compels a different conclusion. In excluding this evidence the court analogized to an evidentiary rule that subsequent remedial or precautionary measures are inadmissible to prove culpable conduct. This rule is based, however, not on the grounds that the evidence is not probative of culpable conduct, but rather that public policy favors remedial action. *Cf.* Fed.R.Evid. 407 advisory committee note (the "more impressive ground for exclusion rests on a social policy of encouraging people to take, or at least not discouraging them from taking, steps in furtherance of added safety"). Thus, contrary to the *McKee* court's statement, the information plaintiff seeks is relevant, but for reasons of public policy, may not be admissible at trial.

of "the most persuasive" of the evidence concerning non-party insureds, while reducing the burden on the defendants and, we trust, avoiding the wasteful result of the California litigation where overwhelming production was made, but apparently went unused by the requesting party.

■ We wish in addition to take advantage of labor already expended before another judge. We therefore will also grant plaintiff's request that defendants make available all deposition transcripts which were produced in the course of the California Coordination Actions and in which there was testimony concerning the asbestosis-only exclusion, all exhibits marked at those depositions, and all exhibits marked at the trial concerning the asbestosis-only exclusion. The burden of such production to defendants should be minimal.

### 2. *Defendants' Motion to Compel*

Following the parties' recent negotiations regarding discovery issues raised in the defendants' motion, the only remaining discovery dispute involves the plaintiff's assertion of privilege with respect to 34 documents. These documents fall into three categories: (1) 31 documents relating to Jim Walter Corporation's annual reports; (2) two documents relating to notice letters sent to Jim Walter Corporation's insurers; and (3) one document relating to a search for lost policies. We will discuss each of these categories in turn.

### A. Drafts of Footnotes to Jim Walter Corporation's Annual Reports

Defendants request all documents and information relating to the relevant litigation footnotes of Jim Walter Corporation's annual reports and their preparation. Plaintiff has identified 31 documents which are responsive to this request. These consist of drafts of footnotes describing litigation in which the client was involved prepared by the client's in-house counsel for consideration by the client prior to being finalized and made a part of its annual reports. In their first privilege log, plaintiff asserted only a work-product privilege from producing these drafts, but in their more recent, revised privilege log, asserts in addition an attorney-client privilege. We conclude that these documents are privileged under both doctrines.

With respect to the work-product privilege, defendants appear to rely on the rather obvious proposition that Jim Walter Corporation's annual reports were not prepared "in anticipation of litigation." The application of this proposition to the present facts is misplaced. The particular documents sought are lawyers' drafts of material ultimately included as footnotes in those reports and which describe ongoing litigation in which the client was involved. Thus in contrast to the normal business, non-litigation purpose of preparing and issuing an annual report, the process by which an attorney selects the precise language to describe the litigation of his client in such a public document is most inevitably made with that litigation in mind.[11] Moreover, counsel's various, preliminary drafts, especially when read side-by-side with the footnote as finally adopted, are apt to reveal counsel's impressions and opinions concerning that litigation. The work-product doctrine is specifically addressed to protecting such impressions and opinions from disclosure. *See Hickman v. Taylor,* 329 U.S. 495, 510–13, 67 S.Ct. 385, 393–94, 91 L.Ed. 451 (1947).

■ The irony in the instant case is that the descriptions of ongoing litigation actually selected to be included in the annual reports for 1979–80 and 1980–81 are probative of a contemporaneous understanding on the part of the Jim Walter Corporation of the defendants' policy exclusions for asbestosis which appears to be adverse to the position now asserted by the plaintiff in the litigation before this court. Although such admissions (and preliminary drafts of such admissions) were obviously not made in

---

**11.** The fact that the final drafts were intended to be disclosed to the public does not render the privilege inapplicable. Surely defendants would not argue that prior drafts of the pleadings it has submitted to this court and filed in the public record are not protected from disclosure by the work-product privilege.

anticipation of *this* litigation, we hold that the work-product privilege is applicable because such drafts were prepared in anticipation of some litigation by or for a party in this litigation. *Federal Trade Commission v. Grolier, Inc.*, 462 U.S. 19, 25, 103 S.Ct. 2209, 2213, 76 L.Ed.2d 387 (1983); *Panter v. Marshall Field & Co.*, 80 F.R.D. 718, 724 (N.D.Ill.1978).[12]

Defendants therefore have the burden of showing a substantial need for the information and the inability to obtain the material by other means. Defendants argue that they have met this burden because the annual reports, and thus the materials relating to these reports, are highly relevant and because the plaintiff has sole custody of these documents, defendants cannot obtain them through other means. Here the work-product, however, is not essential, but merely potentially helpful, and therefore, discovery should be denied. *See Republic Gear Co. v. Borg–Warner Corp.*, 381 F.2d 551, 558 (2d Cir.1967). Already having access to the annual reports, defendants would in effect bolster their showing as to the breadth of the policy exclusions by disclosure of plaintiff's *opinion* work-product. Such disclosure requires a "far stronger showing of necessity and unavailability by other means." *Upjohn Co. v. United States*, 449 U.S. 383, 402, 101 S.Ct. 677, 689, 66 L.Ed.2d 584 (1980). Indeed, this court has held that opinion work-product is only discoverable, if at all, when the activities of counsel are directly at issue. *United States v. Exxon Corp.*, 87 F.R.D. 624, 639 (D.D.C.1980). No such issue is raised in the instant case.[13]

■ Plaintiff's assertion of the attorney-client privilege is an alternate ground for denying defendants' motion to compel disclosure of these documents. These documents contain advice given in a professional legal relationship and based on confidential information provided by the client. They are in fact drafts prepared by attorneys on the corporation's behalf to provide a legal opinion as to what information should be disclosed in the client's annual reports concerning ongoing litigation. Although they consist of drafts of material for a public document, they were submitted to the client for approval and thus only were recommendations by counsel as to what material should be released to the public. The confidentiality of such a communication was therefore preserved by the retention of the client's option to reject

---

**12.** Defendants principally rely on *Panter* to support their position in favor of disclosure. In one sentence in the last paragraph of that opinion, the court summarily rejected a claim of work-product privilege as to letters from counsel to their corporate client approving a proposed footnote to the client's financial statements bearing on the litigation in issue. We do not read the court's holding as expansively as defendants. The court does not indicate in what year these letters were transmitted, whether the footnote expressly dealt with ongoing litigation or was only subsequently relevant to the litigation before the court, or even if there was litigation ongoing at the time of this correspondence. The extent to which the absence of such facts undercuts defendants' reliance on this decision is borne out by the court's lengthy discussion elsewhere in the opinion concerning the significance of the "in anticipation of litigation" portion of the test for work-product protection. *See id.* at 725 n. 6.

In the course of that discussion, the court in fact cites cases likewise cited by defendants holding that the work product privilege does not apply to advice or opinion letters rendered by an attorney to a client with respect to "a routine procedure necessary in the securities field and

... not done with litigation in mind," such as opinion letters on the registration of shares, *Garfinkle v. Arcata National Corp.*, 64 F.R.D. 688, 690 (S.D.N.Y.1974), or circulars prepared in connection with stock offerings. *In re Penn Central Commercial Paper Litigation*, 61 F.R.D. 453, 467–68 (S.D.N.Y.1973). Despite the inviting analogy of these cases to the essentially routine issuance of annual reports not "likely generally to involve litigation," *Panter*, 80 F.R.D. at 725 n. 6, the *Panter* court expressly distinguishes the situation, as here, where there existed "a clear threat of litigation 'involving claims which had already arisen.'" *Id.* Indeed, in the instant case, not only had claims arisen, but litigation was pending at the time the documents sought were prepared and those documents were certainly drafted with "litigation in mind."

**13.** Compare *Panter v. Marshall Field & Co.*, 80 F.R.D. 718, 725–26 (N.D.Ill.1978), relied on by defendants, wherein the court ordered discovery notwithstanding assertions of the work-product privilege on the ground that the advice of counsel was directly at issue and thus the need for production of counsel's work product was compelling.

disclosure of any advice or information seen and shared only between counsel and client.[14] The fact that communications in this instance originated from the attorney to the client does not alter the application of the privilege because the communications were based on confidential information provided by the client in the course of pending litigation and in the preparation of the drafts now sought to be disclosed. *See Mead Data Central, Inc. v. United States Department of the Air Force,* 566 F.2d 242, 354 & n. 25 (D.C.Cir.1977) (in federal courts the attorney-client privilege does extend to a confidential communication from an attorney to a client, but only if that communication is based on confidential information provided by the client).

We conclude that plaintiff's claim of privilege, whether work-product or attorney-client, is valid and bars discovery of this material.

B. Interoffice Memoranda Concerning Notice Letters to Insurance Companies

Defendants also seek disclosure of two documents, each described in plaintiff's revised privilege list as "[i]nteroffice memorandum from in-house counsel to client's Insurance Department re: notice letters to insurance companies." The relevance of this material is borne out by our memorandum opinion of May 7, 1985, wherein we stated:

> Jim Walter's conduct in not notifying defendants of asbestos disease claims for five or six years is further evidence of how Jim Walter interpreted the policies.... Plaintiff's inaction, stretching over five years, suggests that plaintiff

thought that the policies involved did not cover asbestos-related claims.

Memo. Op. at 8. Defendants challenge plaintiff's assertion of attorney-client privilege on the ground that plaintiff's description is inadequate to meet the burden of showing facts to support every element of the privilege. Plaintiff responds that the memoranda concern directions to the client with respect to giving notice of claims to insurance companies and because they contain confidential legal advice from a lawyer to his client and involve the lawyer's legal conclusions, they are protected by the attorney-client privilege.

Plaintiff confuses the two privileges. The attorney-client privilege is focused on the *information* provided to the attorney in confidence, not the attorney's advice. *See Mead Data Central, Inc. v. United States Department of the Air Force,* 566 F.2d 242, 254 n. 28 (D.C.Cir. 1977) (attorney-client privilege permits nondisclosure of an attorney's opinion or advice only in order to protect the secrecy of the underlying facts). A communication from the attorney to the client is protected by the privilege only if the communication is based on that confidential information. *Id.* at 254. Plaintiff does not claim that these memoranda are based on or disclose confidential information[15] and thus the plaintiff has not adequately shown that the privilege applies. The work product doctrine, in contrast, protects documents disclosing an attorney's opinions or conclusions, but only when prepared in anticipation of litigation. Plaintiff does not claim, however, that these memoranda were prepared in anticipation of litigation, although

---

**14.** Clearly information included in these drafts, but not disclosed in the annual reports—the very information defendants seek—was intended by the client to remain confidential and remains so even though other information was revealed to the public.

**15.** *United States v. United Shoe Machinery Corp.,* 89 F.Supp. 357 (D.Mass.1950), cited by the plaintiff is not to the contrary. Indeed, the court identifies as one of the elements necessary for the privilege to apply is that there be a communication relating "to a fact *of which the attorney was informed ... by his client ...* without the

presence of strangers...." (emphasis supplied). *Id.* at 358. The court specifically noted that "a high percentage of the communications passing to or from [in-house] counsel fall outside the privilege because they report or comment on information coming from persons outside the corporation or from public documents, or are summaries of conferences held with or in the presence of outsiders." *Id.* at 360. To the extent these memoranda concern notice of claims made from outsiders, they appear not to be based on any confidential communication, and are thus not privileged.

memoranda concerning notice to insurance companies of claims made against the client are arguably in a broad sense prepared in anticipation of litigation. Even were we to make this assumption, however, the fact remains that the plaintiff has not asserted this privilege in either of two privilege logs or in any of its pleadings before this court. Plaintiff has in effect waived its objection on the ground of this privilege. *See Perry v. Golub,* 74 F.R.D. 360, 363 (N.D.Ala.1976) (failure to assert a privilege within proper time limits constitutes waiver of such objection). We therefore conclude that defendants are entitled to production of these two documents in response to their discovery request.

### C. Interoffice Memorandum Concerning Search for Lost Insurance Policies

Finally, defendants seek to compel disclosure of a document described in plaintiff's revised privilege list as an "[i]nteroffice memorandum from in-house counsel re: Search for Lost Insurance Policies." Defendants challenge plaintiff's assertion of both the work-product doctrine and the attorney-client privilege again on the ground that plaintiff's description is not sufficient to meet their burden of showing facts to support every element of either privilege. Plaintiff, however, responds that this memorandum "describes and characterizes the legal import of documents found in a search for lost insurance policies." It contends in turn that the memorandum is protected by the work-product doctrine since the search was related to pending or anticipated litigation, and that it is likewise protected by the attorney-client privilege since it contains confidential opinions and characterizations by inhouse counsel with respect to documents found in the search.

██ While plaintiff again confuses the respective elements of these two privileges, we nonetheless conclude that this memorandum is protected from disclosure. The memorandum is privileged under the work product doctrine because it discloses counsel's opinions regarding pending or anticipated litigation, and is protected by the attorney client privilege because this com-

munication was made to the client in a professional capacity and was based on information provided counsel in confidence.

An order consistent with the foregoing has been entered this day.

### ORDER

Upon consideration of plaintiff's motion to compel, defendants' motion to compel, the parties' supplemental papers thereto, and the entire record herein, it is by the court this 29th day of May, 1986,

ORDERED that plaintiff's motion to compel is granted to the extent that defendants shall make available for inspection by plaintiff (1) all policies issued by them which contain an asbestosis or asbestos-related exclusion and which were written by or referred to by the underwriters of the policies at issue in the instant case prior to the issuance of the policies before the court; (2) all claims and underwriting files concerning these policies; (3) all deposition transcripts taken in the California Coordination Actions in which there was testimony concerning the asbestosis-only exclusion; (4) all exhibits marked at those depositions; and (5) all exhibits marked at the trial in the California Coordination Actions which concern the asbestosis-only exclusion. It is understood that plaintiff's inspection of this material will be at plaintiff's expense and shall take place at locations designated by defendants, and it is

FURTHER ORDERED that defendants' motion to compel be granted in part and denied in part. Plaintiff shall produce two interoffice memoranda concerning notice letters to insurance companies.