**In re GRAND JURY (G.J. NO. 87–03–A) (Subpoenas served on Four Attorneys).**

**No. 87–8893.**

United States Court of Appeals, Eleventh Circuit.

May 3, 1988.

Bruce H. Morris, Atlanta, Ga., for appellants.

Don O. Burley, U.S. Dept. of Justice, Office of Consumer Litigation, Washington, D.C., for appellee.

Before FAY and CLARK, Circuit Judges, and GUIN *, District Judge.

FAY, Circuit Judge:

This matter involves grand jury subpoenas issued to four attorneys as part of a jury tampering investigation stemming from a federal criminal trial. Appellants, the subjects of the grand jury investigation, seek reversal of a district court order compelling the testimony of their attorneys

---

* Honorable J. Foy Guin, Jr., U.S. District Judge for the Northern District of Alabama, sitting by designation.

and the production of documents relating to the jury selection process. We affirm.

## BACKGROUND

The District Court for the Northern District of Georgia tried appellants on a 124 count indictment.[1] In February, 1987, prior to jury selection, several members of the jury panel advised the judge that unknown individuals had called them to ask questions about their service as jurors. The court questioned each contacted juror, but at that time no juror revealed any contact that was improper. The court did not discharge the panel and the attorneys selected a jury from it. Notwithstanding, the court instructed the United States Attorney to investigate whether the government or the defense made any improper contacts with jurors.

The investigation uncovered evidence of jury tampering by the appellants which the government brought before the grand jury. In order to determine the extent of appellants' jury tampering, the grand jury issued subpoenas *duces tecum* to the four trial attorneys representing each of the appellants. These subpoenas require the attorneys to testify and to produce certain documents relating to jury selection in *United States v. McDonald. See supra,* note 1. Among these documents are copies of the venire list which contain the attorneys' handwritten notes and separate sheets of notes that the attorneys took during voir dire. Both sets of documents contain the attorneys' mental impressions concerning juror selection.

The four attorneys filed a motion to quash the subpoenas. They contended, among other things, that such communications are protected by the attorney-client privilege. Appellants, as clients of these attorneys, intervened. On November 5, 1987, the trial court denied the motions to quash the subpoenas. The trial court then granted a stay of enforcement of the proceedings pending an appeal to this Court.

## DISCUSSION

Both parties agree that the grand jury is seeking confidential communications which are traditionally protected by the attorney-client privilege. *See United States v. United Shoe Machinery Corp.*, 89 F.Supp. 357, 358–359 (D.Mass.1950). The attorney-client privilege attaches to communications made in confidence by a client to an attorney for the purposes of securing legal advice or assistance. *United States v. White*, 617 F.2d 1131, 1135 (5th Cir.1980)[2]; *United States v. Kelly*, 569 F.2d 928, 938 (5th Cir.), *cert. denied*, 439 U.S. 829, 99 S.Ct. 105, 58 L.Ed.2d 123 (1978). The attorney-client privilege, however, does not protect communications made in furtherance of a crime or fraud. *Clark v. United States*, 289 U.S. 1, 15, 53 S.Ct. 465, 469, 77 L.Ed. 993 (1933); *In re Grand Jury Proceedings (Pavlick)*, 680 F.2d 1026, 1028 (5th Cir. Unit A 1982) (en banc).

This Court applies a two-pronged test to determine whether the crime-fraud exception pertains to a particular attorney-client communication.

> First, there must be a prima facie showing that the client was engaged in criminal or fraudulent conduct when he sought the advice of counsel, that he was planning such conduct when he sought the advice of counsel, or that he committed a crime or fraud subsequent to receiving the benefit of counsel's advice. Second, there must be a showing that the attorney's assistance was obtained in furtherance of the criminal or fraudulent activity or was closely related to it.

*In re Grand Jury Investigation (Schroeder)*, 842 F.2d 1223, 1226 (11th Cir.1987).

---

**1.** The indictment charged appellants with a variety of crimes arising from an odometer tampering and title washing scheme. *United States v. Homer McDonald, Jr.*, 653 F.Supp. 793 (N.D.Ga. 1987). On February 12, 1987, a jury found the appellants guilty of various violations of 18 U.S. C. §§ 371, 1341, and 2314, and 15 U.S.C. § 1990c. In a separate proceeding, appellants have also appealed their convictions to this

Court (*U.S. v. McDonald*, 840 F.2d 24 (11th Cir.1988)).

**2.** The Eleventh Circuit in *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

Appellants apparently concede that the government established a prima facie case of jury tampering and satisfied the first prong.[3] Appellants' Brief at 9. Appellants' primary contention is that the government has not satisfied the second prong of the test. Before the court may find a crime-fraud exception, appellants claim that the government must show that appellants actually obtained the attorneys' assistance in furtherance of the criminal activity.[4] We acknowledge that a party can satisfy the second prong of *Schroeder* by "showing that the communication is related to the criminal or fraudulent activity established under the first prong."[5] *Schroeder*, at 1227.

In support of their motion to quash the grand jury subpoenas, the four attorneys submitted *in camera* a proffer which recounted the discussions they had with their clients regarding juror selection. In opposition, the government submitted *in camera* an affidavit from a Federal Bureau of Investigation Special Agent detailing information on the alleged jury tampering scheme which was gathered as part of an ongoing investigation. The court found that the F.B.I. affidavit establishes relatedness under *Schroeder*. We can reverse the district court's finding only if it constituted an abuse of discretion. *See Schroeder*, at 1226.

Although we find some of the language used by the district court a little confus-

ing,[6] a review of the entire record convinces us that both prongs of *Schroeder* have been met. Taken together, the F.B.I. agent's affidavit and the attorneys' proffer reflect a sufficient connection between the alleged jury tampering and the attorneys' contacts. We realize that defense counsel did not have the opportunity to review the material submitted *in camera* by the government, nor were the attorneys for the government privy to the *in camera* proffer made by the subpoenaed attorneys.

As stated earlier, we attribute no knowledge of jury tampering toward appellants' attorneys as such is not required to pierce the attorney-client privilege. *See supra* note 4. We merely hold that there has been a showing made that the appellants could have obtained their attorneys' assistance for the purpose of carrying out criminal activity. Because such a conclusion is reasonable from the facts presented, a prima facie showing has been made under the second prong of *Schroeder*.[7]

Nothing we hold today affects in any way the rights of counsel, when they appear as grand jury witnesses, to interpose objections to specific questions if deemed appropriate. Those matters will be resolved as the investigation progresses.

## CONCLUSION

The district court did not abuse its discretion in concluding that the government's

3. The district court determined that the facts set forth by the government establish a prima facie showing of criminal or fraudulent conduct. The record reveals that there was an attempt to tamper with at least one potential juror prior to trial, and perhaps an attempt to contact another. We agree that the government met its burden of a prima facie showing under the first prong of *Schroeder*.

4. The appellants also assert that the attorneys were not involved, even unwittingly, in the jury tampering scheme. The government, however, does not contend that any of the subpoenaed attorneys were involved in or even knew of the alleged attempt to influence potential jurors. We note that the government need not show that the attorneys had any knowledge of or involvement in the wrongdoing in order to pierce the privilege. *Schroeder*, at 1227; *In re Grand Jury Proceeding (Twist)*, 689 F.2d 1351, 1352 n. 2 (11th Cir.1982) (per curiam).

5. Although we did not enunciate in *Schroeder* the precise degree of relatedness necessary to meet this standard, we did state that "the requirement that legal advice must be related to the client's criminal or fraudulent conduct should not be interpreted restrictively." *Schroeder*, at 1227.

6. Specifically, the district court states that the F.B.I. agent's affidavit establishes "relatedness" under *Schroeder*. The affidavit does not establish a connection between appellants' alleged jury tampering and their attorneys' contacts. Rather, it strengthens the prima facie case of jury tampering against the appellants.

7. Due to the confidential nature of these proceedings, we are unable to reveal anything more of the *in camera* submissions.

showing satisfied the two-pronged test set forth in *Schroeder*.

AFFIRMED.