The COMMONWEALTH OF PUERTO RICO, Plaintiff,

v.

SS ZOE COLOCOTRONI, etc., Defendant.

Civ. No. 252–73.

United States District Court,
D. Puerto Rico.

Jan. 31, 1974.

_____

1. Dickey v. Florida, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1969).

Germán González, Santurce, P. R., for the Government of Puerto Rico Environmental Quality Board.

Nicolas Jimenez, San Juan, P. R., for Jimenez & Fuste.

Vicente M. Ydrach, of Hartzell, Fernandez, Novas & Ydrach, San Juan, P. R., for defendant.

## MEMORANDUM OPINION AND ORDER

CANCIO, Chief Judge.

Defendant, the West of England Ship Owners Mutual Protection and Indemnity Association (Luxembourg) (hereinafter West), has asked this Court to reconsider an order entered June 20, 1973 directing one of its attorneys in the present action, Mr. Vicente M. Ydrach, to appear at a deposition and produce certain documents which plaintiffs, the Commonwealth of Puerto Rico and its Environmental Quality Board (hereinafter collectively designated as Commonwealth) allegedly *need* and cannot obtain otherwise in order to ascertain whether West is doing business in Puerto Rico and, hence, is subject to process and venue within this jurisdiction in an *in personam* action against West initiated by Commonwealth under the Direct Action provisions of the Puerto Rico Insurance Code, 26 L.P.R.A. Sec. 2003(1).[1]

The case has been pending since March 1973, when because of an alleged oil spillage in the navigable waters of Puerto Rico, plaintiffs sued *in rem* the vessel, the M/V Zoe Colocotroni, and *in personam* its owners, Marbonanza Compañía Naviera, S.A., as well as the hull and protection and indemnity underwriters at the time unknown, but which subsequently turned out to be West.

On April 12, 1973 the Court granted plaintiffs' motion for leave to serve summons upon West pursuant to Federal Rules of Civil Procedure 4(e) and Rules 4.7 and 10.1 of the Commonwealth Rules of Civil Procedure. According to the Return of Service, summons was served on the Secretary of State of the Commonwealth and the Commissioner of Insurance on April 23, 1973.

On June 5, 1973, plaintiffs filed a notice for the taking of the deposition of Mr. Vicente M. Ydrach, who happens to be a member of the law firm of Hartzell, Ydrach, Santiago, Pérez & Novas, which represents West in the present action. The Court in its subpoena required Mr. Ydrach to bring to the deposition, scheduled for the 16th of June, 1973, the documents listed in an attached schedule marked as Exhibit 1.

On June 11, 1973, Mr. Vicente Ydrach moved the Court to quash the notice for taking of deposition and deposition subpoena served on him by plaintiffs on the grounds that in a related action in admiralty, Civil 289–73, Limitation of Liability, the Court, on April 7, 1973, had en-

---

1. Said Section provides as follows:

"(1) Any individual sustaining damages and losses shall have, at his option, a direct action against the insurer under the terms and limitations of the policy, which action he may exercise against the insurer only or against the insurer and the insured jointly. The direct action against the insurer may only be exercised in Puerto Rico. The lia-bility of the insurer shall not exceed that provided for in the policy, and the court shall determine, not only the liability of the insurer, but also the amount of the loss. Any action brought under this section shall be subject to the conditions of the policy or contract and to the defenses that may be pleaded by the insurer to the direct action instituted by the insured."

tered an injunction against prosecution of other actions, in which it made reference to the present case, Civil 252–73, this being sufficient to stay the deposition here in question. Subsequently, and after a reply from defendants, the aforementioned grounds of opposition to the deposition were abandoned by attorneys for defendant West.

Counsel for plaintiffs and West then came to Court and met in chambers pursuant to Local Rule No. 2 to try to reach an agreement as to the scope of the deposition and production of documents requested. No agreement was reached and thereafter the Court ordered Mr. Vicente M. Ydrach to appear at the deposition sought by plaintiffs and to produce the documents requested by the latter in Exhibit 1 mentioned above. The Court rejected counsel for defendant West's contentions that the documents sought to be produced fell within the coverage of the attorney-client privilege and work-product exceptions to federal discovery as contemplated by Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451.

Defendant West asked for a reconsideration of the Court's order at the close of business on the eve of the taking of the deposition and since the matter could not come in due time before the Court, then chose to appear through the person of Mr. Vicente M. Ydrach at the deposition, but refused to answer all questions and refused the inspection of documents sought by plaintiffs. The latter have now come with a motion requesting the imposition of sanctions, which we will deal with only to a limited extent, since our prime concern is the reconsideration requested by West.

Faced with the two motions mentioned in the preceding paragraph, the Court

thought it best to conduct for itself an inspection of the documents which are said to be privileged, and so issued an order for the production of the same. Defendant West, through its attorneys, readily complied with said order and deposited in chambers approximately forty (40) files containing various letters, telexes, cables, reports and pleadings which, for the most part, have been the subject of claims and cases handled by Hartzell for West.

In view of the voluminous amount of documents contained in each file and the limited time of the Court to engage in a document-by-document perusal in order to determine which ones are privileged and which ones are not, we refer the files deposited with the Court to the United States Magistrate who shall rule upon each document subject to the guidelines and boundaries of the present opinion.

We also refer to the United States Magistrate plaintiffs' motion for the imposition of sanctions filed on June 25, 1973, since disposition of the same bears close relationship with the specific rulings to be made in light of the principles announced herein.

Before setting forth the criteria to be applied in determining whether and to what extent defendant West's contentions of attorney-client and work-product privileges affect the documents submitted for in-camera inspection, it would be well to remember that discovery regarding the legal sufficiency of service of process so as to acquire *in personam* jurisdiction over the person of a defendant is permitted by the Federal Rules of Civil Procedure, specifically, Rule 26.[2] Indeed, as far back as the year 1958 this Court recognized the im-

---

2. Rule 26 provides in pertinent part as follows:

"(a) Discovery Methods. Parties may obtain discovery by one or more of the following methods: depositions upon oral examination or written questions; written interrogatories; production of documents of things or

permission to enter upon land or other property, for inspection and other purposes; physical and mental examinations; and requests for admission. Unless the court orders otherwise under subdivision (c) of this rule, the frequency of use of these methods is not limited.

portance of discovery proceedings bearing on the issue of proper service of process. Commonwealth Refining Co. v. Houdry Process Corp., 22 F.R.D. 306 (D.C.P.R., 1958).

In *Houdry*, the defendant filed a motion to dismiss the complaint challenging the jurisdiction of this Court over its person because it was not subject to service of process within this district and had not been properly served with process in the action. The plaintiff then sought to take depositions of various officers and employees of the defendant Corporation, as well as the production of documents, in order to obtain information necessary to a proper challenge of defendant's motion to dismiss for lack of *in personam* jurisdiction. Defendant opposed the requested discovery. In granting plaintiff's request, the Court held that "wide latitude must be accorded to the plaintiff to establish the requisite minimum contacts" with Puerto Rico and that "a defendant, thus challenging the court's jurisdiction, has no right to keep its records, personnel and sources of information free from any access by the plaintiff through such reasonable discovery measures as are pro

(b) Scope of Discovery. Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:

(1) *In General.* Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

(2) . . .

(3) *Trial Preparation: Materials.* Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

(c) *Protective Orders.* Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) that the discovery not be had; (2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place; (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery; (4) that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters; (5) that discovery be conducted with no one present except persons designated by the court; (6) that a deposition after being sealed be opened only by order of the court; (7) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way; (8) that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court.

If the motion for a protective order is denied in whole or in part, the court may, on such terms and conditions as are just, order that any party or person provide or permit discovery. The provisions of Rule 37(a)(4) apply to the award of expenses incurred in relation to the motion."

vided by the F.R.C.P." 22 F.R.D. at 308.

■ We see no reason to depart from the judicial policy announced in *Houdry,* even though in this case discovery is directed against one of defendant's lawyers. The burden of proof to show that discovery is improper in light of the attorney-client and work-product privileges, as for the jurisdictional issue posed herein, still rests on defendant West or its attorneys.

With this in mind, we turn to consider the principles which ought to guide the Magistrate in determining whether the documents are privileged or not. Although the issue of relevancy has not been directly raised by defendant West, the Magistrate can also arrive at his own determination on this point.

A— Work Product

Defendant West claims that all the files deposited with the Court, with minor exceptions, are covered by the work-product privilege.

The work-product doctrine springs from Hickman v. Taylor, *supra,* and has found its way into Federal Rules of Civil Procedure 26(b)(3), note 2, *supra.*

■ In general, the protective cloak of work product covers material prepared by an attorney in anticipation of litigation. Such material may include private memoranda, written statements of witnesses and mental impressions of personal recollections prepared or formed by an attorney in anticipation of litigation or for trial. It is not clear whether the term litigation is intended to include *only* the present litigation wherein discovery is conducted and the privilege claimed. See 4 Moore Federal Practice Sec. 26.64(2) (2d Ed.1972). Professor Moore states that the determining factor in deciding whether to apply the doctrine to documents prepared in anticipation of a separate litigation are (1) whether the first action is complete; and (2) the degree of relationship between the first and second action.

See: Republic Gear Co. v. Borg-Warner Corp., 381 F.2d 551 (2 Cir., 1967); Hanover Shoe, Inc. v. United Shoe Machinery Corp., 207 F.Supp. 407 (D.C. Penn., 1962); and Tobacco and Allied Stocks v. Transamerica, 16 F.R.D. 534 (D.C.Del., 1954).

This doctrine has been questioned recently by the Court of Appeals of the Fourth Circuit in Duplan Corporation v. Moulinage et Retordine de Chavanoz et al., 487 F.2d 480 (1973) where it held that the work-product doctrine applies to prior, unrelated litigation. The Court found that the interest sought to be protected by the work product—that a lawyer work free from the worry that he might have to hand out the result of his work to an opposing lawyer—did not justify limiting the work-product protection to the same case and justified extending the doctrine to protect work performed in other unrelated litigation.

However, the Court, in this case, expressly disavowed a wooden application of its holding to any future litigation no matter under what circumstances or whether the party seeking discovery shows a substantial need or undue hardship as contemplated by Rule 26:

"Our decision will not in any way frustrate the ends of justice. If the party seeking discovery can demonstrate substantial need . . . specified in the Rule and recognized in Hickman, the district court will order production . . ." 487 F.2d at 485.

■ We think that in the case at bar plaintiffs have sufficiently shown a need and the circumstances justify dispensing with the relative shield which this Court of Appeals erected in the *Duplan* case, *supra.* Plaintiffs are suing a foreign enterprise with its principal place of business and operations in Europe and it would signify undue delay and expense for them to seek discovery of the documents in possession of said company in those circumstances, when they can direct their efforts to the West's corre-

spondents in Puerto Rico. Indeed, it can be said that it is incumbent upon Hartzell to demonstrate (what it has not done, at least with sufficient specificity, in its motions after plaintiffs motion for imposition of sanctions, where the necessity for the documents is set forth) that the documents sought by plaintiffs are otherwise available to them.

Defendant West reads *Hickman* too broadly, in our view. The Court's refusal to permit discovery in that case was prompted by and large on plaintiffs' outright admission that he wanted the oral statements only to help prepare himself to examine witnesses and to make sure that he had not overlooked anything. 329 U.S. at 513, 67 S.Ct. 385, 91 L.Ed. 451. Such a situation is not present in this case. Here plaintiffs need to discover facts otherwise unavailable and within the exclusive knowledge of defendant West and its correspondents, which are crucial to a proper challenge to defendant West's motion to quash service of process, and, as it was recognized in the *Houdry* case, *supra*, "wide latitude must be accorded to the plaintiff to establish . . . [the requisite] minimum contacts . . . through such reasonable discovery measures as provided by the F.R.C.P." 22 F.R.D. at 307.

We think that in the present case, it is sufficient to confine the scope of the work-product privilege to trial preparation material, such as mental impressions, opinions, and the like, when prepared for a first action not yet completed or which bears a substantial relationship with the present litigation, or in which the same counsel exists on either side.

█ Of course, what we have said thus far, in no way dispenses with the requirement that in order for materials or documents such as the above to qualify as work-product of an attorney they must not be primarily prepared in the normal course of business or in view or *not* in anticipation of trial either by the

attorney himself or someone else engaged by him. The best guide to a proper determination of these issues, as far as each document is concerned, is furnished by Judge Leahy in Zenith Corp. v. Radio Corp. of America, 121 F. Supp. 792, 795 (D.C.Del., 1954):

> " '[w]ork product' encompasses the impressions, observations and opinions recorded by an attorney, as the product of his investigation of a case in his actual preparation for trial on behalf of a client. It has been extended to include the recorded investigative work of a person hired . . . and acting under his supervision and direction."

### B– Attorney-Client Privilege

We now turn to the attorney-client privilege. At the outset we point out that *Hickman* cannot be used as authority to bolster up defendant West's contentions of privilege under this theory.

█ Though the Court found it unnecessary "to delineate the content and scope of that privilege as recognized in the federal courts", it nevertheless made clear what does *not* fall under the protective cloak of the privilege, finding that it does not extend to information which an attorney secures from a witness while acting for his client in anticipation of litigation. Nor does it concern the memoranda, trips, communications and other writings which reflect an attorney's mental impressions, conclusions and opinions or legal theories. *Hickman*, supra, at 508, 67 S.Ct. at 392. These types of documents, therefore, cannot be withheld by defendant West under the guise of attorney-client privilege if they are not otherwise protected by the work-product rule we have dealt with above. What is, then, subject to the strictures of this latter privilege?

In general, federal courts have recognized to the invocation of this privilege the same latitude and scope as that recognized by the common law as for admissibility of evidence is concerned.

This means that it must be determined whether the traditional evidentiary criteria identifying this privilege are present in the documents sought to be inspected by plaintiffs.

In our order of July 3, 1973 requesting defendant West to produce the disputed documents for our inspection, we referred to two lower decisions which, in our view, set forth clear and precise principles for the application of the privilege. In other words, for the attorney-client privilege to be successfully invoked, it must appear that:

"1. the asserted holder of the privilege is or sought to become a client . . .

2. the person to whom the communication was made

a) is a member of the bar of a court or his immediate subordinate and

b) is acting as a lawyer in connection with this communication . . .

3. the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either an opinion on law, or legal services or assistance in some legal proceeding." Zenith Radio Corp. v. Radio Corp. of America, 121 F.Supp. at pp. 794–795. See also for a ratification of these criteria, American Cyanamid Company v. Hercules Powder Company, 211 F. Supp. 85, 88–90 (D.C.Del., 1962)

In the case at bar West would be the client asserting the attorney-client privilege, although thus far it has not invoked the privilege directly.

As far as the second requirement for privilege to exist, it is necessary to determine whether the communications contained in the documents which Hartzell has deposited with the Court have been made to the latter exclusively as members of the bar of a court, or even if made to others not necessarily members of any bar, whether they were made in view of and as a part-and-parcel of the original communications to Hartzell.

It must also be determined whether Hartzell has been or is acting as a lawyer in connection with the communications contained in the files deposited with the Court. As stated by Judge Leahy in the *Zenith* case, *supra*:

" 'Acting as a lawyer' encompasses the whole orbit of legal functions. When he acts as an advisor, the attorney must give *predominantly* legal advice to retain his client's privilege of nondisclosure, *not solely, or even largely, business advice*." (Emphasis added.) 121 F.Supp. at 794.

The mere fact that Hartzell is a law firm should not be deemed controlling in ascertaining whether in light of specific requests as evidenced by the documents to be inspected by the Magistrate, but rather nature or function of the services rendered by Hartzell as appears from these documents. Hence, it must be determined whether the information supplied by West and acted upon by Hartzell involves application of law to facts or the rendering of an opinion of law in response to the client's legal inquiries. Similarly, those documents or communications pointing to acts by Hartzell merely as an intermediary or correspondent (following instructions) for a fee in rendering services of a non-legal nature, such as making necessary arrangements for a crewman to be hospitalized or buried, engaging the services of a surveyor for purposes of adjusting insurance claims between West and one of its insured, or making arrangements for the repatriation of seamen, would not be considered privileged within the scope and intendment of the phrase "acting as a lawyer."

We deem the third requirement to be sufficiently self explanatory. However, a cursory view of the present files reveals that there are communications not only between West and Hartzell, but also communications involving other correspondents of West, stevedoring contractors and vessel owners, who might or might not have their vessels insured by West. The Magistrate, in making his ruling as to each document, will bear in mind their relevance to the ultimate jurisdictional issue presented and the fact that said information might be within the exclusive knowledge of West. It must be remembered that documents having a bearing on the litigation at hand do not fall automatically under the attorney-client privilege just because they have been entrusted to a lawyer. Of course, if the documents are so entertained with the legal advice sought so as to form part of the confidential consultation by the client, they might be privileged, if all the other prerequisites for a privilege to exist have been fulfilled.

One last observation. In a motion filed on July 3, 1973, West, through its counsel, expressed its intention to voluntarily produce the following documents for inspection by plaintiffs:

1. 1972 Rules and List of Correspondents of the West of England Ship Owners Mutual Protection and Indemnity Association (Luxembourg) requested in Item 1 to Exhibit 1 of the subpoena directed to Mr. Vicente M. Ydrach.

2. The West of England's Notice to Representatives Abroad, covered by Item 2 of the same Exhibit, which is in fact entitled "Investigation of Claims in Foreign Ports."

3. The circulars, resolutions, correspondence, instructions and messages published and distributed by the West of England and which were mentioned in the course of Mr. Ydrach's attempted deposition which was annexed as Exhibit 1

to plaintiffs' motion for sanctions filed on June 25, 1973.

In view of West's voluntary compliance, the Magistrate need not rule on the documents numbered One to Three above, since whatever privilege might have protected said documents from disclosure has been waived. Nevertheless, the Magistrate may release said documents forthwith to the interested parties or call the parties to a conference or direct them to reach an agreement as to place, time and mode of inspection, whatever in his discretion he may deem more convenient for all concerned.

If the Magistrate considers it appropriate, he may also convene a conference of all counsel concerned in this action to determine whether and to what extent an agreement can be reached as to the scope of discovery herein.

In view of the foregoing, it is hereby ordered that all the files deposited with the Court by Hartzell on behalf of West of England on July 3, 1973 be referred to the United States Magistrate for this District for an in-camera inspection to determine, in accordance with the record and with the principles set forth above, which documents fall under the work-product and attorney-client privilege and which do not. It is suggested that the rulings be set in the manner prescribed in the Appendix to Zenith Radio Corp. v. Radio Corp. of America, 121 F.Supp. 792, 798–801 (D.C.Del., 1954). Prior to the rulings above mentioned, the Magistrate may call counsel for plaintiffs and defendant West to a meeting, in order to try to reach an agreement as to the extent and scope of discovery. The Magistrate may also determine the place, time and mode of inspection of those documents he considers to be not privileged, and whether the deposition of Mr. Vicente M. Ydrach should be continued.

It is further ordered, that, once the Magistrate has issued the rulings aforementioned he shall conduct a hearing on plaintiffs' motion for the imposition of sanctions and determine whether and to

what extent the same should be granted or denied;

It is further ordered that, in view of the lack of opposition of plaintiffs to defendant West's motion filed on December 28, 1973 wherein the latter asks to be excused from returning its files 177–8 Andrés Quintana Riballot v. Neptune Navigation Corporation, Civil No. 528–68 (U.S.D.C.P.R.) and 177–7 Rubén Santiago Martínez v. Compagnie Generale Trasatlantique, et al., Civil No. 175–70 (U.S.D.C.P.R.), the same is granted and defendant West excused from returning said files. However, defendant West must return and deposit with the Magistrate immediately all other files removed with the permission of the Court unless the Magistrate determines otherwise and upon the petition of defendant West to that effect.

It is so ordered.