**BARR MARINE PRODUCTS CO., INC.**

v.

**BORG–WARNER CORP.**

Civ. A. No. 77–4333.

United States District Court,
E. D. Pennsylvania.

Nov. 27, 1979.

David Berger, Merrill G. Davidoff, Howard I. Langer, Berger & Montague, Philadelphia, Pa., for plaintiff.

Patrick T. Ryan, Drinker, Biddle & Reath, Philadelphia, Pa., for defendant.

## OPINION

JOSEPH S. LORD, III, Chief Judge.

At issue are twenty-five documents, submitted for *in camera* inspection, that plaintiff says are discoverable and defendant asserts are protected by the attorney-client privilege. A brief summary of the state of the law with regard to the privilege will be helpful in assessing the privilege claim as to each document.

*THE ATTORNEY–CLIENT PRIVILEGE:*

The purpose of the attorney-client privilege is to encourage complete disclosure of information between client and attorney. As the Third Circuit has observed in its most recent opinion on the privilege, *In re Grand Jury Investigation,* 599 F.2d 1224 (1979), perhaps the most frequently cited formulation of the privilege is that by Judge Wyzanski in *United States v. United Shoe Machinery Corp.,* 89 F.Supp. 357, 358–59 (D.Mass.1950):

> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

The *United Shoe* test obviously raises further questions, *e. g.,* who is a client for purposes of the privilege, what are the perimeters of confidentiality, what is meant by "acting as a lawyer" providing primarily legal services. Obviously, these factors can be narrowly or broadly construed. The significance of this lies in the fact that once a communication is deemed privileged, it is immune from discovery, unlike the work product doctrine, not at issue here, where a showing of good cause can overcome the protection. *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947); *In re Grand Jury Investigation, supra.*

In balancing the concerns of insuring the fullest freedom and honesty of communication against the policy of liberal discovery, the Third Circuit has concluded that "because the privilege obstructs the search for

the truth and because its benefits are, at best, 'indirect and speculative,' it must be 'strictly confined within the narrowest possible limits consistent with the logic of its principle' ". *In re Grand Jury Investigation, supra* at 1235, quoting 8 Wigmore on Evidence § 2291, at 554 (McNaughton rev. 1961).

In this light the Third Circuit adopted the control group test, *In re Grand Jury Investigation, supra* at 1237, which offers a narrow definition of who is a corporate client for purposes of asserting the privilege.

■ As first articulated, under the control group test the privilege applies:

> if the employee making the communication, of whatever rank he may be, is in a position to control or even to take a substantial part in a decision about any action which the corporation may take upon the advice of the attorney, or if he is an authorized member of a body or group which has that authority.

*City of Philadelphia v. Westinghouse Electric Corp.,* 210 F.Supp. 483, 485 (E.D.Pa.), *mandamus and prohibition denied sub nom. General Electric Co. v. Kirkpatrick,* 312 F.2d 742 (3d Cir. 1962), *cert. denied,* 372 U.S. 943, 83 S.Ct. 937, 9 L.Ed.2d 969 (1963). The point is that the corporation is the client; if an employee is not in the control group he or she does not personify the corporate client. As Judge Hannum of this court has observed,

> The significant criteria are not the labels or titles used to designate various individuals, but rather the actual duties and responsibilities which are in fact delegated to these individuals. Such limitations must be placed upon the designation of the control group, otherwise, that group itself would be vested with authority to determine those to whom the privilege would apply, thus, extending the concept beyond the purpose for which it was adopted.

*Congoleum Industries, Inc. v. G.A.F. Corp.,* 49 F.R.D. 82, 85 (E.D.Pa.1969), *aff'd without op.,* 478 F.2d 1398 (3rd Cir. 1973). Moreover, if one member of the control group relays legal advice to another mem-

ber the privilege is not lost. *SCM Corp. v. Xerox Corp.,* 70 F.R.D. 508 (D.Conn.1976), *appeal dismissed,* 534 F.2d 1031 (2d Cir. 1976); *United States v. Aluminum Co. of America,* 193 F.Supp. 251 (N.D.N.Y.1960), Note, *Attorney-client Privilege for Corporate Clients: The Control Group Test,* 84 Harv.L.Rev. 424 (1970).

■ For a communication to be protected by the attorney-client privilege, confidentiality is essential. Thus, communications between attorney and client are not privileged if made in the presence of or communicated to third parties.

■ Since the purpose of the privilege is to insure open disclosure between client and attorney, the privilege only protects client/attorney communications. Thus, a communication between the attorney and any third party not the client is not privileged even if the information contained therein is then conveyed by the attorney to the client. In this light, "[I]n so far as the subject of these communications was the giving of legal or other advice upon the basis of facts disclosed to the attorney by a person outside the organization of defendant and its affiliates the communication is not privileged." *United States v. United Shoe Machinery Corp., supra,* 89 F.Supp. at 359. *See also, Tutson v. Holland,* 60 App. D.C. 188, 190, 50 F.2d 338, 340 (D.C.Cir.), *cert. denied,* 284 U.S. 632, 52 S.Ct. 21, 76 L.Ed. 538 (1931).

■ The communication must be made by the client to the attorney acting as an attorney and not, *e. g.,* as a business advisor. *North American Mortgage Investors v. First Wisconsin National Bank of Milwaukee,* 69 F.R.D. 9 (E.D.Wis.1975); *Burlington Industries v. Exxon Corp.,* 65 F.R.D. 26 (D.Md.1974); *Zenith Radio Corp. v. Radio Corp. of America,* 121 F.Supp. 792 (D.Del. 1954). In sum, attorneys do not " 'act as lawyers' when not primarily engaged in legal activities." *Zenith Radio Corp. v. Radio Corp. of America, supra,* at 794.

■ In addition, the communication must have as a primary purpose the securing or

providing of legal services. Thus, documents that are reports "of general corporate business decisions as opposed to legal advice based upon confidential information" are not privileged. *Congoleum Industries, Inc. v. G.A.F. Corp., supra,* 49 F.R.D. at 86. *See also Burlington Industries v. Exxon Corp., supra; Commonwealth of Puerto Rico v. S.S. Zoe Colocotroni,* 61 F.R.D. 653 (D.Puerto Rico 1974).

■ The key is that communications must be primarily legal. Thus, the privilege is not necessarily lost when non-legal information is part of a communication seeking or giving legal advice. *United States v. United Shoe Machinery Corp., supra,* 89 F.Supp. at 359. Conversely, as then District Judge Newman held, "[w]hen the ultimate corporate decision is based on both a business policy and a legal evaluation, the business aspects of the decision are not protected because legal considerations are also involved." *SCM Corp. v. Xerox Corp., supra,* 70 F.R.D. at 518.

■ Finally, it would seem obvious that business communications cannot be insulated from discovery by virtue of the mention of an attorney's name, or their being directed to an attorney. *Burlington Industries v. Exxon Corp., supra,* 65 F.R.D. 26.

■ The final *United Shoe* factor raises the question whether or not the client, possessor of the privilege, has waived it. Plaintiff, Barr Marine, here alleges that defendant, Borg-Warner, by virtue of raising as an affirmative defense the issue of "meeting competition" has thereby waived the privilege with regard to all communications that deal with the issue of "meeting competition." Plaintiff's Memorandum Concerning *In Camera* Inspection Of Documents To Which Attorney-client Privilege Has Been Asserted, at 6–7. Generally, the attorney-client privilege cannot "be held to be waived by bringing or defending a suit, for in the attorney-client situation the privilege is designed to promote confidential relations that may well deal with the very suit in question." 4 Moore's Federal Practice, ¶ 26.60(6) at 26–252 (2d ed. 1976).

Waiver of the privilege can occur, however, by pleading privileged material as a defense, but such waiver has only been found where the party resisting discovery raises as a defense that which transpired between client and counsel, or reliance on advice of counsel, or questions counsel's authority. *Hunt v. Blackburn,* 128 U.S. 464, 9 S.Ct. 125, 32 L.Ed. 488 (1888); *Trans World Airlines, Inc. v. Hughes,* 332 F.2d 602 (2d Cir. 1964), *cert. dismissed,* 380 U.S. 248, 85 S.Ct. 934, 13 L.Ed.2d 817 (1965); *Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter, Inc.,* 32 F.2d 195 (2d Cir.), *cert. denied,* 280 U.S. 579, 50 S.Ct. 32, 74 L.Ed. 629 (1929); *Garfinkle v. Arcata National Corp.,* 64 F.R.D. 688 (S.D.N.Y.1974).

■ As defendant properly observes, the defense of "meeting competition" does not by itself raise attorney-client communications as an issue, and therefore does not serve as a waiver of the privilege. Defendant's Response to Plaintiff's Memorandum Concerning *In Camera* Inspection of Documents to Which Attorney-client Privilege Has Been Asserted, at 3.

■ The twenty-five documents at issue purportedly relate to communications between in-house counsel and the corporate client. In *In re Grand Jury Investigation,* the Third Circuit specifically noted that it was confronted with an outside counsel situation and therefore did not have to address the issue of the protection, if any, the attorney-client privilege affords to communications made to in-house counsel. *Supra,* 599 F.2d at 1233 n.2. Other courts addressing this issue have adhered to the description that "[t]he type of service performed by house counsel is substantially like that performed by many members of the large urban law firms. The distinction is chiefly that the house counsel gives advice to one regular client, the outside counsel to several regular clients." *United States v. United Shoe Machinery Corp., supra,* 89 F.Supp. at 360. These courts have accepted Judge Wyzanski's conclusion that this difference is not sufficient to distinguish the two kinds of counsel for privilege purposes. *Natta v. Hogan,* 392 F.2d 686, 692 (10th Cir. 1968);

*Burlington Industries v. Exxon Corp., supra,* 65 F.R.D. at 36. The fact, by itself, that in-house counsel are involved in the communications at issue should not affect the protection afforded by the attorney-client privilege.

■ One last point should be raised before evaluating the applicability of the privilege to the individual documents, and that is the issue of burden. A party asserting the privilege has the burden of demonstrating that the privilege exists and that each of the criteria set forth by Judge Wyzanski is satisfied. *Virginia Electric & Power Co. v. Sun Shipbuilding & Dry Dock Co.,* 68 F.R.D. 397, 401 (E.D.Va.1975); *International Paper Co. v. Fibreboard Corp.,* 63 F.R.D. 88, 93 (D.Del.1974); *Honeywell, Inc. v. Piper Aircraft Corp.,* 50 F.R.D. 117, 120 (M.D. Pa.1970). The court in *International Paper Co.* held that a claim of privilege must be substantiated by reasons for preserving confidentiality.

> In short, a party resisting discovery on the ground of the attorney-client privilege must by affidavit show sufficient *facts* as to bring the identified and described document within the narrow confines of the privilege. Nor will submitting a batch of documents to the Court *in camera* provide an adequate or suitable substitute.

63 F.R.D. at 94.

Of the twenty-five documents, eight are privileged, fourteen non-privileged and three partially privileged. Some of the documents are letters; others are entitled inter-office correspondence or memoranda. These differences are not relevant to the question of whether the attorney-client privilege against disclosure applies.

*PRIVILEGED DOCUMENTS:*

■ (1) Documents Nos. 7 and 9, inter-office memoranda dated January 13, 1967, and February 23, 1967, respectively, from Robert Murphy, Senior Vice President and General Counsel of Borg-Warner to E. S. Russey, President and General Manager of the Warner Gear Division from 1952 to 1967, carbon copies to C. W. Houchins, associate general counsel, Borg-Warner. The documents are confidential communications from an attorney "acting as a lawyer" to a client, and expressly give legal advice.

(2) Document No. 11, inter-office memorandum dated May 2, 1967, from Robert Murphy to John Oesterle, president and general manager, Warner Gear Division, 1967–68, carbon copies to E. S. Russey and C. W. Houchins indisputably providing legal advice.

(3) Document No. 12, letter dated May 24, 1967, from E. S. Russey, senior vice-president, Borg-Warner, (note: although never stated by defendant, it appears from the letterhead on document No. 12 that E. S. Russey had transferred from Warner Gear to Borg-Warner) to Robert Murphy, carbon copies to J. C. Oesterle, C. W. Houchins. Although legal advice is not expressly requested, the context of the letter is such that it is appropriate to imply such a request.

(4) Document No. 14, inter-office memorandum dated January 24, 1969, from Donald Basta, attorney, legal department, Borg-Warner to Charles Baker, Sales Manager—Marine, Warner Gear Division, carbon copies to R. J. Parsons, secretary and associate general counsel of Borg-Warner and C. W. Houchins. As Sales Manager, Baker was responsible for the marketing of Borg-Warner marine products in domestic markets. Answer to Interrogatories 3 Through 8, Defendant's First Supplemental Answers to Plaintiff's Interrogatories—First Set. This description is sufficient to identify Baker as a member of the control group of the Warner Gear Division. The letter is specifically marked by the writer, "Confidential Attorney-Client Letter; Do Not Circulate." Although such denomination by itself is not dispositive, this is indeed a confidential communication between attorney and client (member of the control group) regarding legal advice.

(5) Document No. 19, inter-office memorandum dated October 22, 1976, from C. H. Baker, Jr. to L. L. Reed, carbon copies to R. L. Schroeder, Manager, International and Marine Sales, August 1, 1976 to May 1, 1977

(responsible for all international sales of Warner Gear products as well as the domestic marketing of Warner Gear marine products, Answers to Interrogatories 3 through 8, Defendant's First Supplemental Answers to Plaintiff's Interrogatories—First Set), and C. W. Houchins. This is an inter-office memorandum from one member of the control group to other members memorializing the discussion at an earlier meeting of client and counsel where legal matters were addressed. As noted above, the relaying of legal advice among members of the control group does not constitute a waiver of the privilege. *SCM Corp. v. Xerox Corp.*, 70 F.R.D. 508.

(6) Document No. 20, inter-office memorandum dated November 23, 1976, from C. W. Houchins to C. H. Baker, Jr. The memorandum is from an attorney to his client and refers to a specific request by the client for legal advice. The memorandum offers that advice and is so privileged.

(7) Document No. 21, memorandum dated November 11, 1977, by G. A. Gilchrist of telephone conversation with C. W. Houchins. At the time of the memorandum, Gilchrist was Sales Manager-Marine, a position held by Charles Baker, *see* discussion of document No. 14. The document is a memorialization of a confidential conversation between client and attorney about legal matters.

*NON–PRIVILEGED DOCUMENTS:*

██ Defendant has not met its burden of showing that the following documents are privileged communications. Thus, they are discoverable.

(8) Document No. 1, inter-office memorandum dated May 31, 1966, from E. S. Russey to J. C. Oesterle, R. L. Schroeder, J. H. Monjar, carbon copy to Robert Murphy. This document is not privileged for several reasons:

(a) R. L. Schroeder at this time was a Warner Gear division sales engineer who assisted in the marketing of various Warner Gear products, Answer to Interrogatories 3 through 8, Defendant's First Supplemental Answers to Plaintiff's Interrogatories—First Set, a job description

that is not sufficient to define Schroeder as a member of the control group.

(b) J. H. Monjar was a member of the sales department, Answer to Interrogatories 24 and 68, Defendant's Second Supplemental Answers to Plaintiff's Interrogatories—First and Second Sets, a job description also not sufficient to define Monjar as a member of the control group.

(c) Although the memorandum refers to a discussion with Robert Murphy, the latter was a senior vice-president of Borg-Warner as well as general counsel. The memorandum relates to business matters of pricing, and in no way states or indicates that the conversation with Murphy raised any legal questions. Murphy could well have been functioning during the conversation referred to not as an attorney, but as a senior corporate officer of defendant corporation. Defendant has not shown otherwise. Since, however, two recipients of the memorandum were not at the time members of the control group, Murphy's posture for purposes of evaluating the privilege issue need not be determined with finality.

(9) Documents Nos. 2, 3, 4, all letters dated July 6, 1966, September 26, 1966, October 10, 1966, respectively, from E. S. Russey to Robert Murphy. All three are cover letters attached to non-privileged documents (letters from Warner Gear division to third-party buyers). Although document No. 3 impliedly and document No. 4 expressly request advice, it is unclear that it is legal services that are requested. Moreover, as with document No. 1, defendant has not shown that Murphy was addressed in his capacity as general counsel as distinct from his corporate position as senior vice-president of Borg-Warner. In addition, carbon copies of documents 3 and 4 were sent to corporate employees who were not members of the control group:

(a) Document No. 3 to R. L. Schroeder and J. H. Monjar, see discussion of document No. 1.

(b) Document No. 4 to Schroeder, Monjar and C. H. Baker, at the time a sales representative in the Detroit area, An-

swer to Interrogatories 3 through 8, Defendant's First Supplemental Answers to Plaintiff's Interrogatories—First Set. A sales representative, without further clarification from defendant, is likely to contribute information to a decision-making group, as opposed to being a member of such a group. *Cf. Congoleum Industries, Inc. v. G.A.F. Corp.*, 49 F.R.D. 82, 85 (E.D.Pa.1969).

(10) Document No. 5, inter-office memorandum dated October 19, 1966 from Robert Murphy to E. S. Russey. The memorandum offers business advice and, as with documents Nos. 1, 2, 3, and 4, Murphy's posture is not clearly that of an attorney advising a client on legal matters. Indeed, even if it were shown that Murphy was functioning as an attorney and not as senior vice-president, the communication is readily understandable as business as opposed to legal advice. *Burlington Industries v. Exxon Corp., supra; Commonwealth of Puerto Rico v. S.S. Zoe Colocotroni, supra.*

(11) Document No. 6, inter-office memorandum dated October 28, 1966 from E. S. Russey to Robert Murphy, R. L. Schroeder, J. H. Monjar, J. C. Oesterle, C. H. Baker. This is a cover letter attached to a non-privileged document (letter to potential buyer). No legal services are requested expressly or impliedly; again, Murphy may well be addressed in his business as opposed to legal capacity. J. C. Oesterle at this time was executive vice-president and assistant general manager of Warner Gear division. Although defendant has provided no additional information, it is reasonable to assume from his job title that Oesterle was a member of the control group. This conclusion is, however, not necessary to the decision about the applicability of the privilege to this document, since of the five individuals addressed, three are not members of the control group (see discussion of documents Nos. 1 and 6).

(12) Documents Nos. 8, 10, letters dated January 25, 1967, and March 8, 1967, respectively, from E. S. Russey to Robert Murphy, carbon copy to C. W. Houchins, blind carbon copies to J. C. Oesterle, R. L. Schroeder, J.

D. Coffelt, assistant, Borg-Warner legal department. Although these letters discuss antitrust law, a copy was sent in each instance to R. L. Schroeder, at the time a sales engineer and not a member of the control group (see discussion of document No. 1). That the copy to R. L. Schroeder was a blind carbon copy is irrelevant for purposes of waiver of the privilege. It was E. S. Russey, acting as the client, who forwarded the copy to a non-control group member. *Cf. United States v. Tellier*, 255 F.2d 441 (2d Cir.), *cert. denied*, 358 U.S. 821, 79 S.Ct. 33, 3 L.Ed.2d 62 (1958) (court held the communication at its inception was not intended to be confidential, since the writer enclosed copies for third parties, regardless of whether those copies were in fact delivered).

(13) Document No. 13, inter-office memorandum dated January 16, 1969, from R. L. Schroeder to C. H. Baker, carbon copies to R. J. Parsons; H. E. Blood, Jr., vice-president—sales; S. H. Mieras, president and general manager (March 1968–August 1971). This memorandum is from a non-control group member regarding business and legal matters. It memorializes non-privileged communications: first, a conversation with C. H. Baker about his discussions with a third-party buyer; second, a conversation with attorney Parsons asking for a legal opinion. That Schroeder was communicating with the attorney at the request of Baker, a control group member, does not bring the communication under the privilege umbrella. *In re Grand Jury Investigation, supra.* The Third Circuit rejected the approach of *Harper & Roe Publishers, Inc. v. Decker*, 423 F.2d 487 (7th Cir. 1970), *aff'd by an equally divided court*, 400 U.S. 348, 91 S.Ct. 479, 27 L.Ed.2d 433 (1971), in which the Seventh Circuit held that where an employee makes a confidential communication to an attorney at the direction of his or her superiors it may be privileged. Thus, Schroeder's status as a non-control group member is dispositive.

(14) Documents No. 15, 16, inter-office memoranda dated September 26, 1975, and October 1, 1975, respectively, from C. W.

Houchins to L. L. Reed. (Document No. 16 was carbon copied to C. H. Baker). Both documents are from an attorney "acting as a lawyer" to a client discussing legal issues. However, in both instances, the memoranda are based solely on data communicated from and to third parties. (Document No. 16 is a cover memorandum attached to a non-privileged document, a letter to counsel for a third party). *E. g., United States v. United Shoe Machinery, Corp., supra,* 89 F.Supp. at 359. Thus, these documents in no way can fulfill the purpose of the privilege to protect confidential communications between client and attorney.

(15) Document No. 18, inter-office memorandum dated January 23, 1976, from C. W. Houchins to L. L. Reed, vice-president, marketing, 1972 to the present, carbon copy to R. J. Parsons. According to defendant's submissions, Reed is responsible for the planning and direction of all sales and marketing operations of the Warner Gear Division including marine products, sales and marketing. Answers to Interrogatories 3 through 8, Defendant's First Supplemental Answers to Plaintiff's Interrogatories—First Set, and as such a member of the control group. Document No. 18 is a cover letter for a non-privileged communication (letter from an opposing attorney). The cover letter concerns communications between Reed and Houchins and might have been privileged but for the fact that there is no evidence either in the letter or supporting data from defendants that the prior communications between client and attorney referred to were confidential.

(16) Document No. 22, letter dated November 14, 1977, from C. W. Houchins to L. L. Reed, carbon copies to R. J. Parsons, C. H. Baker, G. A. Gilchrist. This is a cover letter to a non-privileged document (letter from an opposing attorney). The cover letter is an attorney's communication to his client (control group member, but is based solely on facts received from a third party, and as such is not privileged). *Sperti Products, Inc. v. Coca-Cola Co.,* 262 F.Supp. 148, 149 (D.Del.1966); *United States v. United Shoe Machinery Corp., supra,* 89 F.Supp. at 359.

(17) Document No. 23, letter dated December 1, 1977, from Paul G. Bower, outside attorney, to C. W. Houchins, in-house counsel. This document is a cover letter to a non-privileged document (a letter from Bower to an opposing attorney). Although a communication between counsel for the same client may be privileged, it must satisfy the other factors necessary for the privilege to attach. In this instance the document refers only to non-privileged matter, and does not discuss information conveyed by the client.

*PARTIALLY PRIVILEGED DOCUMENTS:*

■ Documents No. 17, 24 and 25 present the previously unaddressed problem of mixed communications, partially privileged, partially not.

(18) Document No. 17, inter-office memorandum dated November 18, 1975 from L. L. Reed to C. H. Baker; R. T. Brown, president and general manager, Warner Gear Division; J. F. Wallace, vice-president—finance, Warner Gear Division. This is a cover memorandum attached to a non-privileged document, a draft of a position paper to be sent to an opposing attorney.[1] With the exception of ¶ 3, the memorandum is a communication among non-attorneys regarding primarily a business decision.[2]

---

1. Although the confidentiality of the position paper is not at issue, suffice it to note that although the position paper was a draft and therefore had not been communicated to a third party, it would still not be privileged inasmuch as it was not prepared with the requisite confidential intent. *Cf. United States v. Tellier, supra.*

2. Although the memorandum is from one member of the control group to three other members, it should be noted that in Defendant's

Response to Plaintiff's Request for Production of Documents—Second Set (docketed paper # 22) at 3, Borg-Warner objected to requests for Brown's records on grounds that "Mr. Brown as president of the entire Warner Gear Division with over-all responsibility for the division's operations, was not involved in the manufacture, sale or distribution of Borg-Warner Marine transmissions or marine transmission parts on any on-going basis," and his "records are, therefore, irrelevant to any matter

Paragraph 3 refers to advice of counsel not explicitly in reference to the draft, but rather to the underlying legal issue involved. As such, ¶ 3 is privileged and should be excised before the document is discovered. *United States v. United Shoe Machinery Corp.* (re letters of lawyers to clients: "such parts of them are privileged as contain, or have opinions based on, information furnished by an officer or employee of the defendant in confidence without the presence of third parties.") *Supra*, 89 F.Supp. at 359. Excision as an approach for handling mixed communications can be inferred from the district court's discussion in *SCM Corp. v. Xerox Corp.*, "When the ultimate corporate decision is based on both a business policy and a legal evaluation, the business aspects of the decision are not protected because legal considerations are also involved." *Supra*, 70 F.R.D. at 518.

(19) Document No. 24. This document is not clearly identified. It appears to be a memorandum, dated December 19, 1977, by G. A. Gilchrist memorializing two conversations, one with a potential buyer and one with an unidentified member of the Borg-Warner legal department. With the exception of three sentences recording legal department advice not directly related to the conversation with a third party, the memorandum refers entirely to business matters. As such it is not a communication between client and attorney and therefore the document is not privileged, with the exception of the three sentences referred to above which should be excised.

(20) Document No. 25, memorandum dated May 15, 1979, by G. A. Gilchrist memorializing a phone communication with a third party, about business matters. The next-to-last paragraph of the memorandum refers to a confidential communication between the client and attorney about legal matters and as such is privileged and should be excised.

involved in this action." Arguably Brown is therefore not a member of the control group. For the purpose of analyzing this document, however, I will assume that Brown is a control group member.